(No. 30192.—

OBEAR-NESTER GLASS COMPANY, Plaintiff in Error, *v.* THE INDUSTRIAL COMMISSION *et al.*—(ROBERT THOMAS, Defendant in Error.)

*Opinion filed November 20, 1947.*

OEHMKE & DUNHAM, (HOWARD F. BOMAN, of counsel,) both of East St. Louis, for plaintiff in error.

LOUIS BEASLEY, of East St. Louis, for defendant in error.

Per CURIAM: Robert Thomas filed his application with the Industrial Commission to recover compensation for the death of his wife, Mary Thomas. The application alleged that on December 17, 1944, Mary Thomas received an injury while working as a janitress for the Obear-Nester Glass Company, which caused her death on January 25, 1945.

The case was heard before an arbitrator who entered an award for approximately $3000, including a credit of $70.10 compensation paid to Mary Thomas in her lifetime. The arbitrator made his award under the provisions of paragraph (b) of section 7 of the Workmen's Compensation Act with the finding that the applicant, Robert Thomas, was partially dependent upon the earnings of his wife at the time of her death and that no other person was entitled to compensation under the provisions of paragraph (a) of section 7 of the act. Both parties petitioned for review of the award of the arbitrator, and the Industrial Commission, without hearing any additional evidence, set aside the award and found that at the time of her death Mary Thomas left surviving her husband, Robert Thomas, the applicant, who was totally dependent upon her earnings and, accordingly, entitled to compensation under paragraph (b) of section 7 of the act, and awarded compensation amounting to $4700. The circuit court of St. Clair County confirmed the decision of the Industrial Commission, finding that Robert Thomas was totally dependent upon the earnings of Mary Thomas at the time of her death. We have granted a writ of error for a further review of the record.

Mary Thomas entered the employment of the Obear-Nester Glass Company in 1917 and continued in its employ until injured in December, 1944. Robert Thomas testified that during her lifetime his wife furnished the money to

pay the water, gas, light and other bills, and the taxes on the property they occupied. He added that his wife maintained the house, furnished food for him, and "she must have used all her earnings as I didn't find any money afterwards." Thomas stated that he had been able to work but very little, "just did piddling around;" that his earnings amounted to two or three dollars a week from a barber shop which he conducted; that in the last four or five years his weekly earnings sometimes were four or five dollars; that for the last eight or ten years his only income, received from "junking around," ranged from two to five dollars a week and, further, that "some weeks I don't get nothing." The applicant stated that he suffered from a nervous condition which prevented him from having any regular job or employment.

Anna Clay, Thomas's daughter, and Jane Moore, his wife's niece, corroborated his testimony. The former testified that her stepmother maintained the house; that she understood the money used to build additions to the property came from her, and that her father had no income other than his earnings at the barber shop. The niece testified that Mrs. Thomas furnished her sister and herself with the money to pay bills and that she never received any money for this purpose from Robert Thomas.

Thomas and his wife owned, as tenants in common, two lots in East St. Louis. Of these, one was improved with a two-family house and the other with a single dwelling. Thomas and his wife occupied one of the three units. The maximum income derived from the property during the lifetime of Mary Thomas was twenty-four dollars per month, or twelve dollars for each unit rented. The evidence fails to disclose how much net income accrued to Thomas and his wife from the property. According to Thomas, the money used for building the houses and additions was earned by his wife, "none of it was mine" and that "she collected the rents and kept the money."

It also appears that Thomas owned a horse and wagon which he used to haul garbage to his pigs, seven or eight in number. His daughter testified that he raised pigs; that she had seen him butcher them; that they had fresh meat at the house but that she did not know what became of the rest and, further, that she did not know how many hogs he had at his "hog farm."

The employer introduced in evidence a statement made by Thomas to a claims attorney of its insurance carrier to the effect that, in late years, he had been averaging from fifteen to twenty-five dollars per week in the barber shop. Thomas explained this statement by saying that the amounts mentioned were those received some years ago when he was able to work, adding that he told the insurance adjuster he had operated the barber shop for twenty-four years, but that during four of the years he was not doing anything and someone else was operating the shop. He declared that he was not making fifteen to twenty-five dollars per week when he made the statement, "not at that time, I used to when I was working." The gist of additional testimony is to the same effect. The claims adjuster stated that he did not change any of the information given by Thomas when he dictated the statement.

The sole question requiring consideration is whether Robert Thomas was totally dependent upon his wife, within the meaning of section 7(b) of the Workmen's Compensation Act. Section 7 (Ill. Rev. Stat. 1945, chap. 48, par. 144,) prescribes the amount of compensation to be paid for an injury to the employee resulting in death. Paragraphs (a) and (b) of section 7, provides: ".(a) If the employee leaves any widow, child or children whom he was under legal obligation to support at the time of his injury, a sum equal to four times the average annual earnings of the employee, but not less in any event than two thousand five hundred dollars and not more in any event than four thousand dollars. * * * (b) If no amount is payable

under paragraph (a) of this section and the employee leaves any parent, husband, child or children who at the time of injury were totally dependent upon the earnings of the employee, then a sum equal to four times the average annual earnings of the employee, but not less in any event than two thousand five hundred dollars, and not more in any event than four thousand dollars. Any compensation payments other than necessary medical, surgical or hospital fees or services shall be deducted in ascertaining the amount payable on death."

To obtain a reversal, the employer contends that the evidence clearly shows the applicant was not totally dependent upon the earnings of his deceased wife, within the contemplation of the Workmen's Compensation Act, and that, therefore, he is not entitled to an award under paragraph (b) of section 7. The applicable principles are well settled. Dependency implies a present existing relation between two persons, where one is sustained by the other, or looks to or relies on the aid of the other for support or for reasonable necessaries consistent with the dependent's position in life. (*Air Castle, Inc.* v. *Industrial Com.* 394 Ill. 62; *Weil-Kalter Mfg. Co.* v. *Industrial Com.* 376 Ill. 48.) The decisive test in determining dependency, we have frequently announced, is whether the contributions were relied upon by the applicant for his means of living, judging by his position in life, and whether he was, to a substantial degree, supported by the employee at the time of the latter's death. (*Air Castle, Inc.* v. *Industrial Com.* 394 Ill. 62.) Again, it is not fatal to an applicant's claim that he is dependent, even though it appears other means of partial support are available. (*Weil-Kalter Mfg. Co.* v. *Industrial Com.* 376 Ill. 48.) Moreover, the Workmen's Compensation Act, especially in determining questions of dependency, should receive a common-sense and liberal construction. (*Waechter* v. *Industrial Com.* 367 Ill. 256.) Accordingly, this court does not interfere with the finding

of the Industrial Commission on questions of fact relative to the existence and extent of dependency, if there be evidence to sustain the finding. *Air Castle, Inc.* v. *Industrial Com.* 394 Ill. 62; *Weil-Kalter Mfg. Co.* v. *Industrial Com.* 376 Ill. 48.

In the present case, the evidence discloses that the applicant was dependent upon his wife's earnings from the time of their marriage in 1918 to her death twenty-six years later. Thomas was last regularly employed thirty years ago,—prior to his marriage,—as an employee of the Aluminum Ore Company. His wife's earnings from her employment were used to meet household expenses through the years and, from the evidence, it appears that her earnings were required to meet living expenses for the two of them. A fair summary of the evidence with respect to Thomas's earnings in the years immediately preceding the death of his wife is that they averaged two or three dollars a week as a part-time barber and that he occasionally received income in kind from his pigs. The employer places undue stress upon the testimony that Thomas and his wife owned income-producing real estate having a gross rental income, after the latter's death, when Thomas no longer occupied one of the units, of thirty-six dollars per month. We must observe that prior to the death of Mary Thomas the gross rental from the property aggregated only twenty-four dollars monthly and, furthermore, that there is no showing as to how much net income, if any, accrued to her husband. Compensation is not to be denied a surviving husband under section 7(b) of the Workmen's Compensation Act because he was not one hundred per cent dependent upon his wife's earnings. The employer directs our attention to the definition of the word "total" as "all, whole, entire, not partial," but, at the same time, concedes that a surviving husband may be totally dependent, within the purview of the statute, if he receives modest rentals from real estate and income in kind, as did the applicant in the

*Weil-Kalter case.* To satisfy the requirements of total dependency under paragraph (b) of section 7, destitution on the part of the applicant is not a prerequisite. The law does not require one claiming workmen's compensation benefits as a total dependent to be a pauper. Even so, a consideration of all the evidence discloses that the applicant is but little removed from a state of utter poverty. The situation of Robert Thomas, the applicant here, differs but little from that of the applicant in the *Weil-Kalter case.* The income derived from his own efforts was so small that, had it not been for his wife's steady earnings and thrift, he would doubtless have become an object of public charity. Upon the record made, we cannot say the Industrial Commission's finding of fact, confirmed by the circuit court, that the applicant was totally dependent upon his wife's earnings, was manifestly against the weight of the evidence.

Upon the authority of *Weil-Kalter Mfg. Co.* v. *Industrial Com.* 376 Ill. 48, and for the reasons stated in this opinion, the judgment of the circuit court of St. Clair County is affirmed.

*Judgment affirmed.*