In the Matter of the Claim of Ella Mae Trent made in behalf of herself as wife, and Donald Wayne Trent and James Walter Trent, Jr., as children, of J. Walter Trent, deceased employee of the Union Pacific Coal Company, under Workmen's Compensation Law.

ELLA MAE TRENT,

*Claimant and Appellant,*

vs.

THE UNION PACIFIC COAL COMPANY,

*Defendant and Respondent.*

(No. 2468; May 15, 1951; 231 Pac. (2d) 180).

148

For the claimant and appellant the cause was submitted upon the brief of W. A. Muir, Glenn G. Stanton and W. J. Muir all of Rock Springs, Wyoming, and oral argument by Mr. W. A. Muir.

For the defendant and respondent the cause was submitted upon the brief and also oral argument of Edwin V. Magagna and Joseph H. Galicich, both of Rock Springs, Wyoming.

## OPINION

RINER, Justice.

This cause arises under the Workmen's Compensation Act of the State of Wyoming and brings up for review an order made by the District Court of Sweetwater County declining to make an award in favor of plaintiff and appellant, Ella Mae Trent, who asserts that at the time of the death of J. Walter Trent she was his

wife and depending on him for support. The employer, the Union Pacific Coal Company, as defined below, and respondent here objected to and questioned the claimant's right to an award under the Act aforesaid.

This proceeding was instituted by the claimant by direct appeal to reverse the ruling of the district court regarding her status as hereinbefore described. The appellant will usually be mentioned hereinafter as "the claimant" and the defendant and respondent as "The Coal Company or Employer." The facts to be considered here are substantially these:

J. Walter Trent was engaged in the extra-hazardous business of mining coal being employed by the defendant coal company in the underground workings of one of its mines at Stansbury, Wyoming. He was working on a loose piece of cap rock in the mine on February 17, 1948, when a portion of it fell and struck him and knocked him "into the running pan line." The accident grew out of his employment and was not due solely to the culpable negligence of the employee. His duties were those of "duckbill operator for mechanical loading crew." What has been stated above in this paragraph is summarized from the "Employers' Report of Accident" which appears to be somewhat more complete and detailed in the matters covered thereby than any other reports filed in the matter. A "duckbill" loader is a mechanical device for loading coal on to a conveyor. Vol. 5 of Encyclopedia Britannica (1950 Ed.) 910, where that text says that the duckbill loader "can be used even where the place being driven is narrow. The differential movement of the shaking conveyor that pitches the coal forward as does a shovel in the hands of a miner is used to enable the duckbill attachment at the end of the shaking conveyor to dig into the coal. As the duckbill has a flaring mouth and wedged teeth it gets under the pile. As soon as the coal is in the

shovel-like duckbill it is carried back toward the room mouth. By arranging for the swivelling of the conveyor it is possible to make the duckbill attachment clear a wide area of coal." The Dictionary of Occupational Titles, Vol. 1 for March 1949 2d Ed. page 1017, issued by the U.S. Government Printing Office March 1949 more concisely says that a duckbill operator "operates a small power shovel that has a round-nosed scoop called a duckbill to load coal into cars" in a bituminous coal mine.

Trent died in the Wyoming General Hospital at Rock Springs the same day he suffered the injuries mentioned above due to the rock-fall already described. Claims for compensation were filed by Ella Mae as a widow of the employee and in behalf of Donald Wayne Trent and James Walter Trent, Jr., by their guardian, Beatrice Trent Taylor, minor children of the employee by a former marriage. It is disclosed by the evidence that claimant herself has several minor children as the issue of her previous marriage to Charles Jordan, from whom she was divorced. If Ella Mae should be determined to be the widow of the employee it is suggested that the Jordan children might possibly be entitled to recover as step-children. If so the maximum allowance would have to be shared between the Jordan and Trent children thereby altering the award to the latter as made by the trial court.

Ella Mae testified that she and J. Walter Trent were married at Fort Smith, Arkansas on November 10, 1945; that they lived together in Oklahoma until her husband, leaving her in Oklahoma, left for Wyoming on May 19, 1947; that on October 24th of that year she obtained a divorce from him in Oklahoma City, Oklahoma; that he did not contribute to her support during the time he left for and remained in Wyoming and prior to this divorce decree.

The Oklahoma divorce decree found that the parties had no children by the Arkansas marriage; that no property had been accumulated by them and that the defendant Trent had been guilty of gross neglect of duty toward the plaintiff, Ella Mae, and that she was entitled to a divorce from him. Her former name of Jordan was also restored to her by that decree. In conclusion this decree as required by the law of Oklahoma (Oklahoma Statutes 1941 Title 12, § 1282) adjudged "that this decree did not become absolute and take effect until the expiration of six months from the date hereof."

This special provision of the Oklahoma Statutes has been construed by the Supreme Court of Oklahoma in the case of Barnett v. Frederick et al, 33 Okla. 49, 124 P. 57 where this language is used:

"KANE J. The only question involved herein is Does a decree of divorce take effect so as to affect property rights until the expiration of six months from the day and date when such judgment was rendered? The court below answered the question in the affirmative, and we are of the opinion that its answer is correct. That has been the law in this jurisdiction for a great many years."

The State of Kansas has a similar provision and it has been similarly construed in Durland v. Durland 67 Kan. 734, 74 P. 274. The third syllabus of the case reads as follows:

"3. Upon the rendition of a decree of divorce the relation of husband and wife no longer exists between the parties to the suit, and if one of them should die within six months following the date of the decree the survivor can take no share of the property of the deceased, under the statute of descents and distributions, by virtue of the former relationship."

(see Rev. St. Kansas 1923, § 60-1514).

It appears that Trent was twice employed by the coal company; the first time about July 16, 1947 and again on January 2nd, 1948. Shortly before Christmas day, 1947, he had quit work in the Stansbury mine and had gone to Oklahoma where he stayed in Oklahoma City visiting his two sons and living at his former wife's, (Ella Mae's) home from Christmas Eve, Wednesday the 24th to the following Monday morning, December 29th, when he again departed for Wyoming. It seems he gave Ella Mae several Christmas presents while at her home and, as she testified, they co-habited as man and wife three nights while he stayed there. No marriage license was obtained by these parties on that occasion and no legal marriage ceremony was performed for them during his Christmas visit to Oklahoma City, Ella Mae testifying that she was under the opinion "that we did not have to do that." She did not accompany him to Wyoming when he left on the Monday following Christmas Day and thereafter he contributed nothing to her support, she continuing to work as a telephone operator in Oklahoma City until his death on February 17, 1948. During his second period of employment in Wyoming he did, however, send money to Oklahoma City for the support of his own children, the two boys, Donald Wayne and James Walter Trent. After Trent's death claimant came to Wyoming and made certain funeral arrangements the expenses of which were mostly defrayed by the Workmen's Compensation Fund of this State upon Court order made to that effect. We understand that the Wyoming Mortuary has not yet been paid in full.

The cause was tried to the court without a jury and the final judgment and order of award rendered, incorporated the following findings of fact:

"That said J. Walter Trent was injured on the 17th day of February, 1948, at Stansbury, in Sweetwater County,

Wyoming, while in the employment of the Union Pacific Coal Company; that said injury was not caused by the culpable negligence of said employee; and that it resulted in the death of said employee on February 17, 1948;

"That said J. Walter Trent and claimant Ella Mae Trent were married to each other on the 10th day of November, 1945, at Fort Smith, Arkansas, but that they were fully and completely divorced from each other at Oklahoma City, Oklahoma, on the 24th day of October 1947; and that at the time of the injury and death of said J. Walter Trent on February 17, 1948, he and claimant Ella Mae Trent were not married to each other by marriage duly solemnized by legal ceremony as required by Sub-section (j) of Section 72-106, Wyoming Compiled Statutes 1945;

"The Court further finds that said Ella Mae Trent, claimant, was capable of earning her own living; that at the time of said employee's injury and death, and prior thereto, she had undertaken to and did earn her own living; that she did not look to said J. Walter Trent for support; and that she was not dependent upon him in fact, to which finding the claimant objects and is allowed an exception.

"The Court further finds that said J. Walter Trent was survived by said Donald Wayne Trent, son, born October 2, 1933, and James Walter Trent, Jr., son, born February 22, 1936, they being the minor children of the workman by a former marriage; and that compensation should be awarded to them in the following amounts: "Donald Wayne Trent, for three years, seven months and fifteen days, at the rate of $240.00 per year, being $870.00.

"James Walter Trent, Jr., for six years, no months, and five days, at the rate of $240.00 per year, being $1,443.57."

The judgment and order of award aforesaid entered upon these findings was:

"IT IS THEREFORE, ORDERED AND ADJUDGED that the claim for compensation of said Ella Mae Trent

be, and the same is, hereby denied; and said claimant having made objection to this order, she is hereby allowed an exception.

"IT IS FURTHER ORDERED that said Donald Wayne Trent be, and he is, hereby awarded compensation in the sum of $870.00 and that said James Walter Trent, Jr., be, and he is, hereby awarded compensation in the sum of $1,443.57; and that said award of compensation be paid from the State Industrial Accident Fund in the manner provided by law, and credited to the account of each child, to be held by the State Treasurer and disbursed as the Court having jurisdiction of said compensation may hereafter order.

"IT IS FURTHER ORDERED that costs of said proceeding be paid out of the Industrial Accident Fund as provided by law."

Sub-section (j) of section 72-106 W.C.S. 1945 referred to in the court's findings reads so far as at this time pertinent:

"(j) 'Dependent families' as used in this chapter (article) means such members of the workman's family as are wholly or in part *actually* dependent upon the workman for support at the time of the injury. No spouse shall be entitled to the benefits of this chapter nor shall such fact influence any awards made hereunder *unless he or she shall have been married to the workman by a marriage duly solemnized by legal ceremony at the time of the injury;*" (Italics supplied.)

This sub-division as it was originally enacted in Chapter 124 Laws of Wyoming 1915 at that time read:

"(j) 'Dependent families' as used in this Act means such members of the workman's family, as were wholly or in part dependent upon the workman for support at the time of the injury and shall include widow or husband, as the case may be, and children, or if no widow, husband or children, the parents of the injured workman, if actually dependent upon him for support at the time of the injury; if it be shown that the surviving spouse wilfully deserted deceased without fault upon the part of the deceased, such surviving spouse will

not be regarded, as a dependent in any degree. No surviving spouse shall be entitled to the benefits of this Act, unless she shall have been married to the deceased at the time of the injury."

By Chapter 129 Laws of Wyoming 1933 the changes appearing in W.C.S. 1945 section 72-106 sub-division (j) quoted above were made.

In this connection it should also be noted that section 72-121 sub-division (d) (1) W.C.S. 1945 also now provides in its first clause that:

"(1) But if the workman leaves a widow or invalid widower, *to whom he or she has been regularly married by a marriage duly solemnized by a legal ceremony* such surviving spouse shall receive the sum of Forty-nine Hundred and Fifty Dollars ($4950.00), but in every casc (case) the said award shall be paid in monthly installments at the rate of Fifty-five Dollars ($55.00) per month;" (Italics supplied.)

Originally, this section as it passed the State Legislature in 1915 as Chapter 124 section 19 (d) (1) was couched in this language in its first sentence:

"But if the workman leaves a widow or invalid widower, such surviving spouse shall receive a lump sum payment of $1,000.00 to which shall be added a lump sum aggregating the present worth of Sixty ($60.00) Dollars per year for each surviving child under sixteen (16) years of age until the time when each of said surviving children shall become sixteen (16) years of age, provided that the aggregate sum so added on account of children under sixteen (16) years of age shall in no case exceed an amount equal to the lump sum provided to be paid the surviving spouse, and provided further that if it be shown that the surviving spouse wilfully deserted deceased without fault upon the part of the deceased, such surviving spouse shall not be regarded as a dependent in any degree, but in such cases the right of children under sixteen (16) years of age to compensation shall not be defeated, but the aggregate sum allowed them shall not exceed in any case the amount, which would have been payable to the

surviving spouse if there had been no desertion of the deceased."

In 1925, eight years before sub-section (j) of section 72-106 W.C.S. 1945 appeared in its final form as altered in 1933 and quoted above, section 19 (d) (1) as section 4334 W.C.S. 1920 sub-section (d) (1) was amended, Laws of Wyoming 1925 Chapter 124, to read thus in its first sentence:

"(1) But if the workman leaves a widow or invalid widower to whom she or he had been regularly married by a marriage duly solemnized by a legal ceremony, such surviving spouse shall receive a lump sum payment of Two Thousand ($2,000.00) Dollars; provided, that if it be shown that the surviving spouse wilfully deserted deceased without fault upon the part of the deceased, such surviving spouse shall not be regarded as a dependent in any degree, but in such case the right of boys under sixteen (16) years of age and girls under eighteen (18) years of age to compensation shall not be defeated."

It will be observed that in 1925 the amendatory Statute embodied also the requirement that the widow of the workman in order to obtain an award must have been married to him "by a marriage duly solemnized by a legal ceremony" just as in 1933, and subsequently the same requirements substantially appear in Wyoming Law and were carried forward to the Wyoming Compiled Statutes 1945 as we have seen.

It should not be overlooked that the second sentence of section 4 of Article 10 of the Wyoming Constitution (the entire amendatory section 4 having been adopted by popular vote at the General Election held in 1914) supplies specific authority for the Legislature to classify for compensation purposes persons injured in extra-hazardous employment and stresses that awards should be made to *dependent* families of workmen who died as a result of injuries suffered in such employment.

While it is true the Legislature already possessed the authority to classify persons who should be entitled to receive awards under the Workmen's Compensation Act nevertheless this new phraseology especially sanctioned by the citizens of this State lays especial emphasis upon that power. The material part of § 4 of Article 10 aforesaid reads:

"As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be *fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries,* except in case of injuries due solely to the culpable negligence of the injured employee." (Italics supplied.)

This power is a very broad one and the Supreme Court of the United States has supplied us with pertinent rules whereby to test the proper exercise of that power. In Lindsley v. Natural Carbonic Gas Co. 220 U.S. 61, 31 S.Ct. 337-340, 55 L.Ed. 369 this was said: "The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these: 1. The equal-protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

Under these rules we cannot perceive that the fact the Legislature required a woman to be married to a workman "by marriage duly solemnized by a legal ceremony" in order to obtain an award as his widow (Subsection (j) of Section 72-106, W.C.S. 1945) was an arbitrary or improper classification to be made by the law making body. It merely emphasized the State policy of not sanctioning a common law marriage. See Roberts v. Roberts infra. No contention therefor can be upheld which asserts that this legislative directive denies the equal protection of the laws to those who are affected by it.

The contention is made for claimant that sub-section (j) of section 72-106 W.C.S. 1945 is unconstitutional because the title to the 1933 amendment of section 72-106 is insufficient and does not comply with section 24 of Article 3 of the Wyoming Constitution which reads:

"No bill, except general appropriation bills and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject is embraced in any act which is not expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

Complaint is also made that the amendatory act of 1933 does not obey either the requirements of section 26 of Article 3 of the Wyoming Constitution which declares that:

"No law shall be revised or amended, or the provisions thereof extended by reference to its title only, but so much thereof as is revised, amended, or extended, shall be re-enacted and published at length."

or section 112-102 W.R.S. 1931 whose language is:

"In amending, altering or repealing any of the laws contained in the revised statutes of Wyoming, it shall

be sufficient to designate the laws so amended, altered or repealed by naming the particular division, title, chapter, article, section or sections, of the said revised statutes of Wyoming to be thus affected, and it shall not be necessary in any such case to refer by title or otherwise, to the original legislative enactment to be so affected as aforesaid." (16-401 W.C.S. 1945).

The argument advanced is that:

"The title of chapter 129, S.L. 1933, does not refer to sub-division (j), nor does this title mention the fact that this sub-division will be amended in any respect, nor does this title specify, that the amendment will set out or define what constitutes a marriage or who shall be classified as a dependent wife. This attempted amendment is in direct violation of the Wyoming Constitution, and section 112-102, Wyoming Revised Statutes, 1931."

We think that the argument and these contentions are untenable. The title of Chapter 129 Laws of Wyoming 1933 reads thus:

"AN ACT to amend and re-enact Sections 124-106-7, 124-113, 124-117, 124-120 and 124-140, Wyoming Revised Statutes 1931 relating to compensation for injuries or death resulting from injuries of workmen in accidents occuring in extra-hazardous employments, and providing for judicial investigation of such injuries, and the making of compensation awards to workmen injured in extra-hazardous occupations and *their dependent families*, and requiring non-resident employers in extra-hazardous occupations to give security for faithful compliance with the compensation law, and making the failure so to do a misdemeanor, and prescribing its penalty." (Italics supplied.)

This title is followed by the statement that: "That section 124-106-7, Wyoming Revised Statutes, 1931, be amended and re-enacted to read as follows." Under sub-paragraphs extending from (a) to (k) inclusive a number of definitions of terms employed in the Workmen's Compensation Act are set forth, sub-paragraph

(j) being set forth as quoted above as it appeared before the amendatory act was passed as we have above observed and the language the Legislature desired to add is inserted in its proper place and thereupon all this material is "re-enacted and published at length." In Board of Commissioners of Laramie County v. Stone 7 Wyo. 280, 51 P. 605 this court by Mr. Justice Corn remarked concerning section 24 of Article 3 of the Wyoming Constitution supra, Mr. Chief Justice Potter concurring that:

"It was not intended that the title should be an abstract of all the various provisions that a bill might contain, nor was it intended to prevent the incorporation into a single act of the entire statutory law upon one general subject, but only that every provision must be germane to the subject expressed in the title."

The same opinion also uses the following language: "And it has been, we think rightly, held that it was not to amendments of general statutes thus consolidated into a code that the section was intended to apply, but it was aimed at the separate acts in their original enactment; that in the case of amendments to a code it is sufficient that the title refer to the chapter and section specifically, and declare the purpose to amend or supplement it."

50 Am. Juris. 184 section 204 states that:

"The general rule is that where the title of an original act sufficiently expresses its subject or object in the manner required by the Constitution, the title of an amendatory or supplementary act may simply refer to the original act by its title, and declare the new act to be an amendment of or supplement to the original act, where the provisions of the amendatory or supplementary art (act) are germane to, and not inconsistent with, the subject or object expressed in the title of the original act, and could have been included in the original act under its title. An amendment is not regarded as in violation of constitutional provisions as to singleness of subject and sufficiency of title, where it has

but one general object and is germane to that general object and to the section which it purports to amend."

So Sutherland's Statutory Construction (3rd Ed.) section 1908 page 342-345 declares that:

"The provision in almost all state constitutions that no act shall contain more than one subject, which shall be expressed in its title, is applicable to an amendatory act with the same force as it is to an original act. The constitutional requirement is complied with if the title of the amendatory act identifies the act or section to be amended and declares its purpose to amend, and the new matter added by the amendatory act is germane to the subject of the original act or section, as the case may be. No statement of the matter with which the amendatory act deals nor any expression of the particulars in which the original act or section is altered is necessary."

and the same text in the same section pages 345-6, also says:

"If the title identifies and purports to amend a prior act, any matter properly connected with, or germane to, the subject expressed in the title of that act may be included in the body of the amendatory act. Any matter that could validly have been enacted as part of the original act under its title is considered germane."

Undoubtedly the amendatory matter was germane to that contained in the sub-paragraph (j) (section 124-106-7 W.R.S. 1931) which defined who should be regarded as included within the term "dependent families." When it is recalled that in 1933 the Workmen's Compensation Act already had substantially the same provision as was added to sub-division (j), viz. sub-section (d) (1) of section 124-120 where this language appears: "but if the workman leaves a widow or invalid widower to whom he or she has been regularly married by a marriage duly solemnized by a legal ceremony," it is apparent that the Legislature was only endeavoring in 1933 to clarify and harmonize certain provisions of

the Act and it becomes increasingly obvious that the 1933 amendatory language was germane to the subject matter to which it was added. There can be no doubt that the material added in 1933 could have been enacted as part of the original Workmen's Compensation Act if the Legislature in 1915 had seen fit so to do.

Indeed upon examination of the original act of 1915 (Chapter 124 Laws of Wyoming 1915) we find that sub-paragraph (j) of section 6 defining "dependent's families" contains this language: "No surviving spouse shall be entitled to the benefits of this Act unless she shall have been *married* to the decedent *at the time of the injury.*" (Italics supplied.) The Compiled Statutes of Wyoming 1910 section 3617 in force at the time this act was passed provided that: "Words and phrases shall be taken in their plain or ordinary and usual sense" and the construction of state statutes should be so interpreted. It seems to us that the Legislature must have had in mind the usual meaning of the word "marriage" as a marriage had by a legal ceremony and not a mere common law marriage, which it is insisted for the claimant was accomplished by the parties' acts when Trent went to Oklahoma City during the Christmas season of 1947 as described above a matter not necessary to be now determined.

What is suggested in the preceding paragraph is, it would seem, additionally strengthened and supported by the fact that both our territorial and state statutes have always provided for a ceremonial marriage to be solemnized so far as this jurisdiction is concerned. See Chapter 50 W.C.S. 1945 and the legislative history appended to the several sections of the Article. And this court has held in Roberts v. Roberts 58 Wyo. 438, 133 Pac. (2d) 492, that as the Article aforesaid (section 50-104, W.C.S. 1945) requires that previous to the solemnization of a marriage a license for that purpose

*"must"* be obtained, the mandatory requirement of a license was a legislative declaration of "public policy" which should be enforced by the courts and precluded the formation of the marriage tie in this State by a common law marriage.

Section 4 of Ch. 81 Laws of Wyoming 1876 approved December 10, 1869, announced the same policy for Wyoming as a territory for it stated "Previous to the solemnization of any marriage in this territory a license for that purpose must be obtained from the County Clerk of the County wherein the marriage is to take place." This language has been in substance carried forward in all the subsequent revisions and compilations of our statutes. If such a policy had not existed it would have produced the strange result that a surviving spouse married in Wyoming by a common law marriage, though a citizen of this state, would not be entitled to death benefits under the Workmen's Compensation Act of this commonwealth; while one who had contracted such a relationship in another state where that status was regarded as valid would be entitled to have such benefits awarded to him or her.

If it should be thought that we are mistaken in the views above expressed—and we do not think we are—we note that the wife of an injured workman must be actually and in fact dependent on him at the time of the injuries sustained. The evidence in the case at bar is uncontradicted in sustaining the finding made by the trial court in the judgment and order of award as quoted above as to this phase of the case. As already indicated the provisions of the Workmen's Compensation Act of Wyoming are clear and have been repeated several times and by legislative authority of different years so as to emphasize the legislative intent regarding this matter. While we realize that the Act should be liberally construed—something we have always endeavored

to do in former decisions—we are not, of course, authorized to erase or blot out clear legislative language on the point.

The authorities are reasonably specific too, as to what is meant by dependency in Workmen's Compensation Act cases under statutes somewhat similar to ours. It is only necessary to refer to and review a few of the many decisions which could be cited.

In Sweet v. Sherwood Ice Co. 40 R. I., 203, 100 A. 316, the Supreme Court of Rhode Island on review of the judgment below said:

"The conditions under which the petitioner was living at the time of her husband's death and her relations with him for a long period prior thereto, so far as they bear on the question of dependency appear to be undisputed. Upon an examination of the evidence we find that she was not living with the deceased at the time of his injury, and had not lived with him since August 1914. It further appears that on August 18, 1914, the petitioner signed and made oath to a petition for divorce stating that her husband had neglected and refused to provide necessaries for her support for a period of two years. This petition for divorce was duly filed in court, and upon a hearing thereon in the superior court for the County of Kent on March 23, 1915, the petitioner there testified under oath that for two years prior to August, 1914, her husband had done nothing whatever for her support or for the support of her children, and that during that period she had supported herself and children by her own labors and some assistance from neighbors and friends. The petition of divorce was granted upon the ground of non support. No final decree had been entered at the time of her husband's death. There is also testimony to the effect that the petitioner and her husband continued to live separate and apart following the decision in the suit for divorce, and that she continued to work and support herself and children.

"In this state of the testimony it was competent for the superior court to find that the petitioner does not come within the presumption of dependency set forth in

the act. Section 7 of article 2 of the Compensation Act (Laws 1911-12, C. 831) provides:

" 'The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employe: (a) A wife upon a husband with whom she lives or upon whom she is dependent at the time of his death.'

"The petitioner, under this provision, cannot be presumed to be dependent, for the reason that at the time of the death of the deceased she did not live with him, but was maintaining a separate home and was supporting herself wholly by her own efforts. The authorities are clear that, unless the husband and wife are living together in the sense of 'maintaining a common home,' the presumption of dependency does not arise."

In Icenhour v. Freedom Oil Works Co. et al, 136 Pa. Super. Ct. 318, 20 A. (2d) 817, 818 this was said:

"It is the law that, upon admitted and undisputed facts which permit of but one legitimate inference, dependency is a question of law. But that rule is not applicable in the present case, for the evidence does not support the statement that dependency has been established by admitted and undisputed facts. The province of the court below was to determine whether there was substantial evidence in the record sufficient to sustain the findings of fact of the board. Wilkinson v. Jones & Laughlin Steel Co. 139 Pa. Super. 607, 608, 13 A. (2d) 125. The exclusive power to make findings of fact is vested in the compensation authorities, and with that power goes the responsibility for the findings made.
(5, 6) Only one matter requires further comment. The board made, inter alia, the following findings of fact: 5. 'That the claimant, Maurine Icenhour, and the deceased Elmer Grant Icenhour were legally married on March 5, 1935, and at the time of the deceased's death on June 20, 1935, the claimant and deceased were not living together, but had been living separate and apart during which time the claimant Maurine Icenhour, had been employed as a waitress and maid at the Windsor Hotel in Beaver Falls, and during which time she supported herself and was not dependent upon the deceased for any support.' "

Concerning this fifth finding of fact the court further remarked:

"(7) The fifth finding of fact is comprehensive and clear, and is a distinct finding on the material point in the case. Unless claimant, who was not living with her husband, was actually dependent upon him for support at the time of his death, within the meaning of section 307 of the Workmen's Compensation Act of 1915, as amended by the Act of April 26, 1929, P.L. 829, § 3, 77 P.S. § 562, she was not entitled to compensation, and deceased's employer cannot be held to make compensation unless the fact of actual dependency affirmatively appeared. Creasy v. Phoenix Utilities Co. 276 Pa. 583, 585, 120 A. 659; Karpati v. Cambria Steel Co., 70 Pa. Super, 202, 206."

Relative to the test of dependency the Court of Appeals of Maryland has used this language in Meyler v. Mayor and City Council of Baltimore, 179 Md. 211, 17 A. (2d) 762, 765:

"The test of dependency, as a general rule, is not whether a claimant was capable of supporting himself without the earnings of the workman, but whether he did in fact rely upon such earnings for his livelihood, in whole or in part, under circumstances indicating an intent on the part of the workman to furnish such support. Gonzales v. Chino Copper Co., 29 N. M., 228, 222, P. 903, 905."

The Supreme Court of Illinois in Obear-Nester Glass Co. v. Industrial Commission et al, 398 Ill. 342; 75 N.E. (2d) 892, 894, discussing the term "dependency" had this to say:

"Dependency implies a present existing relation between two persons, where one is sustained by the other, or looks to or relies on the aid of the other for support or for reasonable necessaries consistent with the dependent's position in life. The decisive test in determining dependency, we have frequently announced, is whether the contributions were relied upon by the applicant for his means of living, judging by his position in

life, and whether he was, to a substantial degree, supported by the employee at the time of the latter's death." * * * Accordingly, this court does not interfere with the finding of the Industrial Commission on questions of fact relative to the existence and extent of dependency, if there be evidence to sustain the finding. Air Castle, Inc., v. Industrial Com. 394, Ill. 62, 67 N.E. 2d 177; Weil-Kalter Mfg. Co., v. Industrial Com., 376 Ill. 48, 32 N.E. 2d 889."

So in Smitti v. Roth Cadillac Co. 145 Pa. Super. 292, 21 A. 2d, 127, 130 the Appellate Court pointed out that: "On the issue of actual dependency each case must be controlled by its own circumstances, Barman v. George J. Blair Co. et al., 137 Pa. Super. 193, 6 A. 2d 731, and in consequence, citations of authority are of little help, but it is equally fundamental that dependency is a question of fact to be determined by the referee and the compensation board, and if such finding is based on any substantial evidence or on an inference fairly deducible therefrom, the award must be sustained even though the court might differ from the conclusion reached. The court is without power to substitute its judgment for that of the compensation authorities."

We find 71 C.J. section 279 pages 534-535 upon the authority of numerous cases stating that:

"Under the terms of the statute, in cases of fatal injury, the question of dependency is ordinarily to be determined on evidence of the facts as they existed at the time of the injury which resulted in the employee's death, unaffected by conditions existing prior thereto except in specific cases where the statute requires dependency for a period of time prior to the injury."

In conclusion we do not see how it could be well disregarded that the law making body of this State in sub-division (j) of section 72-106 W.C.S. 1945 supra in defining "dependent families" specifically directs that they must be *"actually"* (as a matter of fact) dependent upon the workman for support at the time of

the injury. The same sub-division forbids the making of a Workmen's Compensation Act award to a spouse unless their marriage was "solemnized by legal ceremony," and thereafter reiterates the words *"at the time of the injury."*

Sub-division (k) of said section defines the words boy and girls and after this has been done the statute further directs "in other cases" questions of family dependency in whole or in part "shall be determined in accordance with the fact as the case may be" and again the words *"at the time of the injury"* are used in the text of the statute.

Referring to and recapitulating to some extent the facts in evidence in the case at bar as mentioned above we recall that Trent left Oklahoma in May 1947. From that time on until his death in February 1948 he sent no support money to Ella Mae and she requested none from him. During all that time she apparently voluntarily supported herself and her children by a former marriage to one Jordan. She also during that time instituted divorce proceedings wherein a decree was procured finding that Trent had been guilty of gross neglect of duty regarding her. He continued to send support money to his own children, the two boys, Donald Wayne Trent and James Walter Trent Jr., during his absence in Wyoming where he had employment most of the time. It would appear plain that Ella Mae waived intentionally any legal right she may have had to claim support from him. The brief visit he made to Oklahoma City and his acts there at that time do not, as it seems to us, change the situation relative to dependency. She never came to Wyoming till after his decease. We cannot perceive how the District Court could have properly made any other findings than it did. It may be noted too that no constitutional questions appear to have been

presented to that court for its consideration. It follows, we think, that the judgment below appealed from was correct and should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.