MARJORIE BIGGERSTAFF, Surviving Parent of John William Biggerstaff, Deceased, v. THE INDUSTRIAL COMMISSION *et al.* (Bee Hill Drilling Company, Appellee).

First District (Industrial Commission Division)   No. 1—87—2693WC

Opinion filed June 8, 1988.

Serkland Muelhausen, of Chicago, for appellant.

Evans & Dixon, of St. Louis, Missouri, for appellee.

JUSTICE CALVO delivered the opinion of the court:

Claimant, Marjorie Biggerstaff, filed an application for adjustment of claim under the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*), alleging that her son's death arose out of and during the course of his employment with Bee Hill Drilling Company. After a hearing, the arbitrator found (1) that claimant had established that her deceased son had entered into a contract for hire with the employer in Illinois, and (2) that claimant had established that she was totally dependent upon her deceased son for support and was entitled to the sum of $225.95 per week "until the sum of $250,000 [has] been paid or until the period of 20 years [has] passed [,] whichever is greater." (Ill. Rev. Stat. 1983, ch. 48, par. 138.7(b).) In

a three-way split decision, the Industrial Commission found that claimant had only established a 50% partial dependency and reduced the award accordingly. (Ill. Rev. Stat. 1983, ch. 48, par. 138.7(c).) The circuit court then reversed the Industrial Commission and set aside the award, finding that Illinois lacked jurisdiction because claimant had failed to establish through admissible evidence the existence of a contract for hire in Illinois. (Ill. Rev. Stat. 1983, ch. 48, par. 138.1(b)(2).) Claimant appeals, alleging (1) that the circuit court erred in finding that claimant had failed to establish the existence of an Illinois contract for hire through admissible evidence, and (2) assuming the circuit court erred on the first issue, that the Industrial Commission erred in finding that claimant was not totally dependent upon her deceased son for support. Due to their nature, the issues will be discussed separately.

## A. JURISDICTION

On February 9, 1983, claimant's 20-year-old son, John Biggerstaff, sustained employment-related injuries in Indiana which resulted in death. The decedent's employer, Bee Hill Drilling Company, is a Texas corporation engaged in the business of drilling oil wells. Although Bee Hill was registered to do business in Illinois, its only drilling operations at the time of the accident were located in Posey County, Indiana.

Darrell Nelson, a "tool pusher" (*i.e.*, one who oversees the operation of an oil rig) for Bee Hill, testified that one of his duties was to hire oil drillers. During an October 1981 telephone conversation conducted exclusively in Illinois, Nelson hired Marvin Settle as an oil driller. Nelson testified that because the operation of an oil rig requires three people, it was Settle's responsibility to expeditiously hire the remaining crew members or lose his opportunity to work for Bee Hill. Nelson testified that such delegation of hiring crews is common to the oil drilling business. Bee Hill paid each crew member hired by Settle individually and withheld social security and income taxes from each crew member's pay. According to Nelson, Bee Hill accepted the crew members hired by Settle as employees of Bee Hill.

Since Settle died before the arbitration hearing, and since there was no written contract for hire, the following evidence was admitted in an attempt to reconstruct the circumstances surrounding the contract for hire between Settle and Biggerstaff.

Dean Brands testified that on or about October 13, 1981, Settle hired him to work on Settle's drilling crew. Brands testified that on this same date Settle telephoned Rusty Clevenger and the decedent

.from Settle's home in Ina, Illinois, to offer them employment on Settle's drilling crew. Brands testified that he, Settle, and Clevenger then drove to McLeansboro, Illinois, where they met decedent at a Hucks store. Decedent then accompanied Brands, Settle and Clevenger on the drive to the Bee Hill oil rig in Indiana. Upon arrival, the crew filled out Illinois and Federal tax forms which had been attached to a note and immediately commenced employment.

Marvin Settle's wife, Barbara, testified that Bee Hill hired her husband to organize an oil drilling crew in October 1981. Barbara testified that she, Dean Brands and Rusty Clevenger were present when her husband phoned the decedent to offer him employment on the drilling crew. At the conclusion of his conversation with the decedent, her husband said "O.K., John, I'll meet you at Hucks." Her husband then left to meet decedent.

Claimant testified that on October 13, 1981, Settle telephoned claimant's house in McLeansboro, Illinois, and asked claimant if he could speak to the decedent. Claimant then asked Settle what he wanted to speak with decedent about, to which Settle replied "about work." Claimant then told Settle she would try to find decedent and tell him to call Settle. After claimant found decedent, she witnessed decedent telephone Settle from her house. During the conversation, the decedent said "Yes. Where will it be at?" After the conversation decedent left the house.

Steve Reffic, an employee of the business which provided clerical services to Bee Hill, testified that the decedent had been employed by Bee Hill from October 1981 through the date of his death (February 15, 1983).

In its memorandum decision, the circuit court determined that the testimonial evidence offered to show the existence of an Illinois contract for hire was inadmissible hearsay. Specifically, the trial court rejected the applicability of the following exceptions to the hearsay rule to statements Settle made before, during and after his telephone conversation with the decedent: (1) that declarant's (Settle's) statements were admissible as showing his state of mind; (2) that declarant's (Settle's) statements were the admissions of an agent of Bee Hill; (3) that declarant's (Settle's) statements were the admissions of a party-opponent by virtue of the declarant's agency relationship with Bee Hill; and (4) that declarant's (Settle's) statements were admissible as declarations against interest. A common thread runs through the substance of the circuit court's rejection of the testimonial evidence: the scope of Settle's authority, if any, to hire Bee Hill employees. Thus, an understanding of the relationship between Settle and Bee Hill is cru-

cial to determining when and where a contract for hire came into existence.

■■ ■ It is well established that agency is a consensual, fiduciary relationship between two legal entities, created by law, by which the principal has the right to control the conduct of the agent, and the agent has power to effect legal relations of the principal. The existence of an agency relationship as well as the scope of the agent's authority may be implied from the facts and circumstances surrounding the particular case. (*Giannini v. First National Bank* (1985), 136 Ill. App. 3d 971, 986, 483 N.E.2d 924, 937.) Unless the relationship of the parties is so clear as to be undisputed, the existence and scope of an agency relationship are questions of fact to be decided by the fact finder. (*Mateyka v. Schroeder* (1987), 152 Ill. App. 3d 854, 862, 504 N.E.2d 1289, 1294.) Under the Illinois Workers' Compensation Act, the fact finder is the Industrial Commission, whose fact findings will not be set aside unless they are contrary to the manifest weight of the evidence. *Rice v. Industrial Comm'n* (1980), 81 Ill. 2d 544, 547, 410 N.E.2d 860, 861.

■ The evidence shows that in October 1981 Darrell Nelson, an employee of Bee Hill, hired Marvin Settle to organize and hire an oil drilling crew to operate one of Bee Hill's oil rigs. This delegation of authority to hire the crew was shown to be a common industry practice. If Settle had failed to expeditiously organize and hire a crew, Settle's employment with Bee Hill would have ceased. After hiring the crew, Settle and the crew immediately went to Bee Hill's oil rig in Indiana and commenced working. Moreover, all crew members, including Settle, were paid by Bee Hill. On the basis of these facts the Industrial Commission properly could have found that Settle was an agent of Bee Hill and that he had the authority to hire a crew on behalf of Bee Hill.

■ Even if the circuit court's evidentiary rulings were correct, the admissible evidence supports a permissible inference that decedent's contract for hire was made in Illinois. Dean Brands testified that after Settle hired him, Settle telephoned Rusty Clevenger and the decedent. Immediately thereafter, Settle, Brands and Clevenger drove to a Hucks store in McLeansboro, Illinois, where they met the decedent, who accompanied them to the Bee Hill oil rig in Indiana and worked with them that evening. Barbara Settle, Dean Brands, and claimant all testified to a phone conversation taking place in Illinois between Settle and decedent which prompted immediate employment-related activity. While it is true that the phone conversation made between Settle and decedent may only have been a conditional

.offer of employment, the fact that the decedent met with Settle and the other crew members at the Hucks store in McLeansboro, Illinois, and immediately went to Bee Hill's oil rig and commenced employment without further approval from Bee Hill management could support a permissible inference that the conditional offer was accepted by decedent and Bee Hill when decedent left McLeansboro with Bee Hill's agent, Marvin Settle. Accordingly, the judgment of the circuit court reversing the Industrial Commission's determination that the contract for hire was made in Illinois is reversed. We must therefore address the dependency issue.

## B. DEPENDENCY

Claimant testified that she married decedent's father, Woodrow, on December 23, 1944. In 1955, the couple paid $390 for a 30-foot by 30-foot abandoned schoolhouse and coal shed located on one acre of ground. The abandoned schoolhouse became the family residence. The couple remained married and lived in the same house until Woodrow's death in 1984. Two children were later born to this marriage: John (the decedent) and Suzanne. From the time of John's birth in 1962, claimant did not work outside of the family home.

Prior to 1968, Woodrow worked in a dress factory located in McLeansboro, Illinois. In 1968, Woodrow had a mental breakdown which resulted in his commitment to a mental hospital. Woodrow did not work after his return to the family home in 1969.

From 1969 through the date of his death, Woodrow received social security disability and veterans benefits (about $500 a month). The children also received supplemental benefits from social security (about $300 per month). Although claimant was listed as a joint payee on Woodrow's checks, and endorsed them for cashing, claimant testified that Woodrow would not allow her to use any of "his money" to support the family. Woodrow instead used "his money" for drinking and buying various items at local auctions. According to claimant, the only family-related bills Woodrow paid after his disability were the monthly electric bill ($12 to $13 per month) and one load of wood for heat. Claimant and the children therefore had to exist upon the social security money sent for the support of John and Suzanne. Out of this money, claimant supplied the children's and her own basic needs. The social security payments for the support of John and Suzanne ceased in 1980 when Suzanne got married even though John was still in high school.

Claimant testified that the decedent provided for all of her needs after benefits ceased in 1980. After decedent began working for Bee

Hill, he carpeted, rewired, and began re-siding the house prior to his death.

Suzanne Berkner, claimant's daughter and decedent's sister, testified that her father never furnished any financial support for the family.

■ Neither destitution nor total dependency upon the decedent's income is a prerequisite to meeting the requirements of total dependency under section 7(b). (*Obear-Nester Glass Co. v. Industrial Comm'n* (1947), 398 Ill. 342, 346-47, 75 N.E.2d 892, 895.) Although no Illinois case precisely defines "total dependency," one is entitled to a finding of total dependency if "the evidence discloses that the [claimant] is but little removed from a state of utter poverty." (398 Ill. at 348, 75 N.E.2d at 895.) Moreover, a claimant who has a home to live in but lacks a steady income to pay her expenses may be regarded as totally dependent. (*Cf. Pope v. Industrial Comm'n* (1922), 305 Ill. 562, 137 N.E. 417 ("So long as [claimant] was provided with a home to live in and money with which to pay part of her expenses, she cannot be regarded as wholly dependent upon the earnings of [decedent]").

■ In the instant case the Industrial Commission determined that claimant had not established a total dependency because she failed to directly establish the value of her house. However, in two separate cases our supreme court upheld Industrial Commission awards of total dependency even though the claimant owned income-producing rental property at the time of the injury. (*Obear-Nester Glass Co.*, 398 Ill. 342, 75 N.E.2d at 892; *Weil-Kalter Manufacturing Co. v. Industrial Comm'n* (1941), 376 Ill. 48, 32 N.E.2d 889.) Thus, the establishment of a precise monetary value of a claimant's residence is not a paramount consideration in determining the existence of total dependency. Rather, the paramount consideration is whether the claimant, absent the earnings of the decedent, would become "an object of public charity." 398 Ill. at 348, 75 N.E.2d at 895.

■ The evidence in the instant case indicates that claimant's house was quite old and in need of substantial renovation (*e.g.*, rewiring, carpeting, re-siding). The evidence further indicates that claimant was totally financially dependent upon the decedent for such home renovations, as well as for her basic needs, and that the renovations had not been completed at the time of decedent's death. Since income-producing rental property cannot, in and of itself, strip a claimant of a finding of total dependency, it is illogical to deny a finding of total dependency on the basis that claimant did not establish the value of a personal residence in need of substantial renovation. The basis for the Industrial Commission's denial of total dependency is there-

fore contrary to the manifest weight of the evidence. Moreover, since claimant established that she was totally dependent upon decedent's income for her basic needs, we conclude that at the time of injury claimant would have become an object of public charity little removed from a state of utter poverty absent decedent's income. A finding of total dependency must therefore be entered.

The circuit court's determination that Illinois lacked jurisdiction over claimant's Workers' Compensation claim is reversed. Since the Industrial Commission's award of partial dependency benefits is contrary to the manifest weight of the evidence, the Industrial Commission's determination of partial dependency is also reversed. Since the evidence will only support an award of total dependency, the cause is remanded to the Industrial Commission with directions that it enter an award of total dependency benefits.

Reversed and remanded with directions.

BARRY, P.J., and McCULLOUGH, McNAMARA and WOODWARD, JJ., concur.