**Anglo-American Provision Company v. Lewis M. Prentiss.**

1. CONSTRUCTION OF CONTRACTS.—*Duty of the Courts.*—In construing a contract, the court will put itself in the position occupied by the parties when it was made, and reading it in the light thus obtained, determine what the contract really is.

2. SAME—*Rule of Interpretation.*—Courts will lean to a construction which sustains rather than to one which defeats an instrument. Where the surroundings and the general context of the paper show an intention to enter into a contract, it is not to be supposed that the parties intentionally made use of words which would defeat such object.

3. SAME—"*Terms of Sale, Cash.*"—The expression, "Terms of sale, cash," is no more than the condition which the law annexes to every sale where a different agreement is not made.

4. SAME—"*I Shall Pay Bills Daily.*"—The statement "I shall pay bills daily" is not to be construed as meaning that a credit was to be given or that payment and delivery were not to be contemporaneous.

5. RESCISSION OF CONTRACTS.—Where a party sells a quantity of lard, to be delivered at stated times, he may refuse to deliver the lard unless it is paid for in legal tender money contemporaneously with delivery, and where, after several deliveries, he has waited until the day following before demanding payment, he is not bound to continue such practice, but he can not assume that there has been an unjustifiable failure to pay and declare the contract at an end.

**Memorandum.**—Assumpsit. In the Circuit Court of Cook County; the Hon. HENRY W. FREEMAN, Judge, presiding. Submitted at the October term, 1894, and affirmed. Opinion filed February 12, 1895.

STATEMENT OF THE CASE.

Appellee declared upon two instruments as constituting one contract. They were as follows:

"CHICAGO, March 17, 1886.

Mr. L. Prentiss, Chicago:

"We hereby agree and bind ourselves to sell to you

250,000 pounds of leaf lard at eight cents per pound, delivery of same to commence March 18, and to be consummated April 15, 1886, and to be made as follows: that is, 10,000 pounds daily when the hogs cut by us enable us to deliver that quantity; but if on any day or number of days during the period mentioned, our product fall short of 10,000 pounds, then we shall have privilege of delivering enough on days when our product shall be in excess, to make the average of our daily deliveries 10,000 pounds. Terms of sale cash. Yours truly,

ANGLO-AMERICAN PROVISION COMPANY.
ROBERT D. FOWLER."

"March 17, 1886.

Anglo-American Provision Company, Chicago.

DEAR SIRS: I have bought from, and hereby agree to take from you 250,000 pounds of leaf lard at eight cents per pound, the delivery of which shall be commenced March 18, and consummated April 15, 1886, to be made as follows, viz.: 10,000 pounds daily, when your product enables you to deliver that quantity, but if, on any days or number of days during the period mentioned, your product is less than that quantity, then you shall have the right to deliver on other days, when your product shall be in excess, enough to make the average of your daily deliveries 10,000 pounds. I shall pay bills daily.

LEWIS M. PRENTISS."

A stipulation was filed February 27, 1894, that the declaration and the amended declaration of plaintiff, on file, shall be held and construed as setting forth in good and proper form and language the legal effect of contract attached to amended declaration, whatever such legal effect may be held to be upon final determination of the cause, and any breach thereof, evidence of which may be introduced or offered upon the trial, and the usual allegation of loss or damage sustained by the plaintiff in consequence of such breach; that the defendant's demurrer be withdrawn, and the pleas heretofore filed to original declaration shall stand as pleas

to amended declaration; that upon the trial the defendant may, upon the issues so formed, offer any evidence which might or would be competent, if properly pleaded, and may also raise any questions of law arising on the face of said declaration and the proof offered under the same, in the same manner and with the same force and effect as if the same had been demurred to and such question raised by demurrer, it being understood that the defendant, by pleading to amended declaration, shall not be deemed to have waived any question of law arising upon said declaration or the contract therein declared upon.

Appellee testified that after the making of the contract, he contracted to sell 90,000 pounds of lard to C. H. Robinson; 100,000 pounds to Cook County Dairy Company; 5,000 pounds to J. H. Hammond & Co.; 25,000 pounds to Roos, Henshaw & Co., and 20,000 pounds to L. E. Fitts & Co.; that as the contracts were signed he said to McGregor, the salesman for the company, "Now, you enter for the three days of this week, Thursday, Friday and Saturday, you enter 10,000 pounds daily, C. H. Robinson & Co., and make your invoice to C. H. Robinson & Co., and collect the money of them; in due time I will give you particulars where the next week's deliveries go, and so on until all the lard is provided for. I told him the price to enter; that took 30,000 pounds of it. He said all right, and so entered it."

Defendant made deliveries up to April 1st inclusive, such deliveries being twenty-seven in number running through thirteen days, embracing about 130,000 pounds, for which appellant received over $10,000.

By the last of March lard had advanced in price. On April 1st appellants sent to appellee the following notice:

CHICAGO, April 1, 1886.

DEAR SIR: We hereby notify you that owing to your failure to pay cash for the leaf lard delivered you by us on contract of March 17th, as required by terms of said contract, we now declare said contract canceled.

Yours truly,

ANGLO-AMERICAN PROVISION COMPANY.

H. O. O'CONNOR.

Thereafter appellee brought suit for the refusal to deliver the balance of the lard, and recovered a judgment of $4,322, from which this appeal is prosecuted

HERRICK, ALLEN & BOYESEN, attorneys for appellant.

DUPEE, JUDAH & WILLARD, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

It is a familiar rule that for the purpose of rightly construing a contract the court will put itself in the position occupied by the parties when it was made, "stand in their shoes," and reading it in the light thus obtained, will determine what the agreement really is. The court thus informed will not interpret the instrument in opposition to or variant from the language actually used; where the meaning of the words is clear there is no room for construction; but where doubt does arise in the mind of the court as to the significance under the circumstances of the language of the contract, the court will inform itself of the circumstances and surroundings under which the undertaking was made and thus determine what the terms employed signify. 2 Parsons on Contracts, 560.

It is also well understood that the court will lean to a construction which sustains rather than to one which defeats an instrument; for it is a most reasonable inference that where the surroundings and the general context of the paper show an intention to enter into a contract, it is not to be supposed that parties intentionally made use of words which would defeat such object. 2 Parsons on Contracts, 503–505.

Proceeding by these rules, we ascertain that each paper was at one interview written in the presence of both parties by an employe of appellant, and that the papers were then and there signed. It is absurd to suppose that the parties then thought that no contract had been made; that they had gone through with an idle and silly ceremony.

The expression, " terms of sale cash," is no more than the

condition annexed to every sale where a different agreement is not made; and the statement, " I shall pay bills daily," is not to be construed as meaning that a credit was to be given, or that payment and delivery were not to be contemporaneous.

In law there are ordinarily no fractions of a day.

We regard the contract as one of a sale for cash on delivery. Having made such a contract, the parties then proceeded to make an arrangement about delivery and payment.

" Cash " meant, strictly, not certified checks, or national bank notes, but legal tender money. Appellants evidently did not intend to insist upon legal tender.

As the obligation as to the quantity to be delivered upon each day depended upon the product of appellant's factory, it was but reasonable that appellant should from day to day notify appellee of the amount it was ready to deliver. Nor can the court affect ignorance of the fact that parties do not usually enter into written contracts involving $20,000 with persons whom they would not, in the ordinary course of business, trust for a few hours with property worth but a small sum. To have arranged, as appellee testified was the case, that delivery should for three days be made to C. H. Robinson & Co., invoices made to and payment collected from them was a most natural thing. Such arrangement was not an alteration of the contract but rather in the carrying of it out.

We do not mean that this arrangement was one by which appellant was bound; that it could have been compelled to collect of Robinson & Co.; but that such arrangement was a mere method of doing the business, as an understanding that payment should be made by check instead of legal tender, might have been.

In this way the parties went on, without complaint, for thirteen days, until more than 130,000 pounds of lard had been delivered, and more than $10,000 paid. April first lard had advanced; it would seem that in the residue to be delivered there was a profit to appellee of about $4,000, and a corresponding loss to appellant.

While this did not affect the obligations of either party, it is not to be lost sight of in determining what, under the disputed evidence, the real fact as to the cancellation was. Appellant had now a strong pecuniary interest in bringing the contract to an end, appellee the same in carrying it on.

Whatever appellant might have done in the past as to delivery of a day's product and waiting until the next day before demanding payment for the same, it was not bound to continue such practice.

It might have refused to deliver to whomever appellee sent to receive the lard, unless pound by pound it was paid, in legal tender, contemporaneously with delivery.

Instead of this, it assumed that there had been an unjustifiable failure to pay cash for the lard already delivered, and thereupon declared the contract at an end.

We do not think that there had been a failure to pay cash under such circumstances as warranted appellant in declaring the contract at an end. It does not appear that up to the day the notice of cancellation was sent, the payment of cash, strictly on delivery, had been insisted upon; while the evidence tends to show that appellee, however small may have been his ready means, would have been able to and would have paid cash on delivery had appellant, so insisting, gone on with the contract.

Appellee, on cross-examination, testified to his ability to get the money and pay for the lard on delivery; we do not think that, following this as a part of his case, he should have been permitted to show that he had sold the lard at an advance to responsible parties. Neither the value of the lard nor his ability to contract were to be proven in this way.

It is not, however, the amount of the recovery, but the right to recover at all that is here in dispute.

The instructions are justly open to criticism; that the jury were misled by them we do not think.

Upon the whole case we think that the plaintiff was entitled to recover as he did, and disregarding errors which may be shown, but by which we do not think the appellant was prejudiced, the judgment of the Superior Court is affirmed.