JOFFRE M. FIELDS, Plaintiff-Appellant, *v.* FRANKLIN LIFE INSURANCE COMPANY, Defendant-Appellee.

Fifth District   No. 82—302

Opinion filed June 21, 1983.—Rehearing denied July 20, 1983.

Feirich, Schoen, Mager, Green and Associates, of Carbondale, for appellant.

Charles E. Schmidt, of Mitchell, Brandon & Schmidt, of Carbondale, and James Dillard, of Franklin Life Insurance Co., of Springfield, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Joffre M. Fields brought this action against Franklin Life Insurance Company as beneficiary of her deceased husband, Charles S. Fields. After a jury trial in the circuit court of Jackson County, judgment was entered on the verdict in favor of defendant.

The question before us on appeal is whether the issuance of a conditional premium receipt by the insurance company, upon payment of the initial premiums by the deceased, bound the company to pay the death benefit where death occurred prior to the issuance of the policy of insurance. We hold that under the terms of the conditional premium receipt, and the facts here presented, no policy of insurance was in effect.

The deceased made two applications for insurance, paid the initial premium and was issued two conditional premium receipts. The receipts provided:

"CAUTION: No interim or temporary insurance coverage is afforded under the provisions of this receipt and no insurance will become effective prior to policy delivery and acceptance unless each and every condition specified in paragraph 'FIRST' on the reverse side is fulfilled exactly. No agent of the company and no broker is authorized to alter or waive any of these conditions."

The conditions stated in paragraph "FIRST" on the reverse side of the receipt were as follows:

"FIRST. Conditions Under Which Insurance May Become Effective Prior to Policy Delivery and Acceptance. If each and every one of the following conditions have been fulfilled EXACTLY—(a) full initial premium must be paid according to the method of premium payment selected in the application for the amount of insurance applied for; (b) all medical examinations, tests, X-rays and electrocardiograms required by the Company's underwriting rules and standards must be completed within 60 days from the date of the application Part 1; (c) the Proposed Insured, (and the Applicant if Payor Benefits are applied for) must be on the Effective Date, as defined below, a risk acceptable under the Company's underwriting rules, limits and standards for a policy EXACTLY as applied for without modification and at the rate of premium paid—then insurance as provided by the terms and conditions of the policy applied for and in use by the Company on the Effective Date but for an amount not exceeding that specified in paragraph 'SECOND' will become effective as of the Effective Date. 'Effective Date' as used herein means the latest of: (a) the date of application Part 1, or (b) the date of completion of all required medical examinations, tests, X-rays and electrocardiograms required by the Company's underwriting rules and standards, or (c) the date, if any, requested in the application."

On April 4, 1978, the day after the deceased submitted a second application for life insurance, Fields sought medical attention from Dr. Hugh D. McGowan, the doctor to whom Fields had brought his son for medical care. McGowan had noticed Fields' weight loss over an 18-month period prior to his death and had advised Fields on at least two occasions to get medical attention. Fields' history of weight loss and a goiter visible to the naked eye were significant factors in Dr. McGowan's diagnosis that Fields suffered from hyperthyroidism. Fields was referred to Dr. G. Ray Ridings who treated Fields with radioactive iodine on May 18, 1978. On May 20, 1978, Fields became very ill, was rushed to a hospital and died that same day. The company attempted to arrange a physical examination of Fields on three occasions; no examination was made prior to his death.

No policy of life insurance was ever issued by Franklin Life on the applications submitted by Charles Fields. By letter dated May 26, 1978, the company informed the plaintiff that the applications of her husband were incomplete. The company denied liability under the terms of the conditional premium receipts and tendered return of the premium payments in the amount of $71.05, which plaintiff rejected.

The company denied that insurance coverage was in effect because the applicant had failed to submit to a medical examination within 60 days from the date of application as required by the conditional premium receipt and by the company's underwriting rules and standards. The company further alleged that the applicant had made a material misrepresentation of fact on the application for life insurance and that the applicant was not an acceptable risk under the company's underwriting rules and standards at any time from the date of application.

On appeal, plaintiff argues that the undisputed facts establish that an interim, or temporary, contract of insurance was in effect at the time of death, and prior to the issuance of a policy of insurance or formal rejection of the application for insurance. The plaintiff also assigns as error the refusal of the court to give certain preemptory instructions containing abstract propositions of law. Plaintiff's tendered instruction No. 27, as an example, told the jury that a temporary contract of insurance was in existence on issuance of the conditional premium receipt if the applicant was not notified by the receipt that he must have a medical examination and if the company failed to establish that the deceased was not an insurable risk at the time of submission of the application. However, plaintiff's lengthy issues instructions put in issue the same matter for the jury's determination.

In short, should we determine that the terms of the conditional premium receipt were ambiguous so that a factual question was properly left for the jury's determination, all possible factual questions were resolved in the defendant's favor. Thus, under plaintiff's issues instruction, the jury determined that the deceased was not an insurable risk; that the deceased failed to submit to a medical examination which was required under the terms of the receipt; that the deceased made a material misrepresentation of fact in the application for insurance; and that the insurance agent did advise the deceased that a medical examination was required. We need not consider whether this issue was properly submitted to the jury where the language of the receipt was clear that the agent could not waive any of the conditions precedent to coverage. See *Wallace v. Prudential Insurance Co. of America* (1973), 12 Ill. App. 3d 623, 299 N.E.2d 344.

The plaintiff submitted for the jury's determination all conceivable factual issues which she perceived to entitle her to recover. Whatever nuances may be gleaned from these subsidiary factual controversies, they have all been resolved in defendant's favor. The plaintiff does not argue on appeal that the verdict of the jury was contrary to the manifest weight of the evidence.

■■ ■ As we have suggested, however, we perceive no ambiguity in the terms of the conditional premium receipt. The meaning and effect of an unambiguous, written instrument is a question of law for the court's determination where there is no ambiguity created by the language used, or where some disputed extrinsic facts, such as peculiar meaning that the parties may attach to the words, create an ambiguity in the meaning of the instrument. (*Ahlvers v. Terminal R.R. Association* (1975), 31 Ill. App. 3d 166, 334 N.E.2d 329; *Sherbrooke Homes, Ltd. v. Krawczyk* (1980), 82 Ill. App. 3d 990, 403 N.E.2d 622; *Ridenhour v. Mollman Publishing Co.* (1978), 66 Ill. App. 3d 1049, 383 N.E.2d 803.) But as we stated in *Ahlvers*, although it was improper to allow the jury to determine the meaning and effect of this conditional premium receipt, where it was done at the request of the plaintiff, she can hardly complain that the jury resolved the issue of its meaning against her.

■■ Plaintiff argues that the trial court erred in not directing a verdict in her favor because it was the "intention" of the parties that the deceased would have interim insurance during the 60 days while the company determined if he was an insurable risk. The corporate defendant's intention, however, can only be determined from the language of the receipt itself. Furthermore, whatever possible relevance the "intention" of the parties might have was resolved in favor of the defendant by the verdict of the jury, as was any question of the defendant's negligence in failing to determine the deceased's insurability within a reasonable period after he submitted the application for insurance. In any event, under the clear wording of the receipt, the defendant could have no responsibility to determine Field's insurability prior to the time he submitted to a medical examination. *Cf. Rivota v. Fidelity & Guarantee Life Insurance Co.* (7th Cir. 1974), 497 F.2d 1225.

■■ Plaintiff further argues that the trial court erred in failing to instruct the jury that a temporary contract of insurance was in effect if the deceased were an insurable risk when the receipt was issued, relying on the holding of *Armstrong v. United Insurance Co. of America* (1981), 98 Ill. App. 3d 1132, 424 N.E.2d 1216.

Plaintiff's reliance on *Armstrong* is misplaced. There, the existence of a temporary contract of insurance was conditional only upon the insurability of the applicant, and, according to the wording of the receipt, only dependent upon the arbitrary approval of the application by the company without any requirement of a medical examination. The applicant had not been told that a medical examination was required, nor was it required by the terms of the receipt. Furthermore,

in finding interim coverage, the court relied on the agent's representation of immediate coverage. The receipt given contained no provision limiting the agency's authority to explain its meaning or to waive any condition precedent to coverage. The court further found "hopeless ambiguities" in the application and receipt.

Conditional receipts differ greatly in their wording and conditions. (See *Reynolds v. Guarantee Reserve Life Ins. Co.* (1976), 44 Ill. App. 3d 764, 358 N.E.2d 940; 1 Couch on Insurance secs. 14:39-14:43 (2d ed. 1959).) The language of the receipt issued here is clear and unambiguous; the applicant must have completed the required medical examination before temporary insurance could be in effect regardless of the company's later determination of the applicant's insurability. There is no language in the receipt reasonably inducing any belief of coverage or reliance on interim insurance prior to the time of compliance with the express conditions therein set out.

The receipt given here is like the one before the court in *Grandpre v. Northwestern National Life Insurance Co.* (S.D. 1977), 261 N.W.2d 804, 807. There the court said that the prominent warning, similar to the one contained in the receipt given Fields, "would alert any ordinary person to understand what had to be completed before the temporary or interim insurance would be effective." See also *Wallace v. Prudential Insurance Co. of America* (1973), 12 Ill. App. 3d 623, 299 N.E.2d 344.

The final issue we need not address; it related only to the amount of insurance, and the jury and this court have resolved the question of liability in defendant's favor.

The judgment of the circuit court of Jackson County is therefore affirmed.

Affirmed.

HARRISON, P.J., and WELCH, J., concur.