**NATIONAL DIAMOND SYNDICATE, INC., Plaintiff–Appellee, Cross–Appellant,**

v.

**UNITED PARCEL SERVICE, INC., Defendant–Appellant, Cross–Appellee.**

Nos. 88–2620, 88–2687.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1989.

Decided March 7, 1990.

Alvin R. Becker, Steven Garmisa, Timothy M. Kelly, Beermann, Swerdlove, Woloshin, Barezky & Berkson, Chicago, Ill., for Nat. Diamond Syndicate, Inc.

James D. Crawford, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., and Robert E. Arroyo, and Michael J. Sreenan, Keck, Mahin & Cate, Chicago, Ill., for United Parcel Service, Inc.

Before CUDAHY, EASTERBROOK and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

Our decision in this case turns on the meaning of "cash" in a c.o.d. delivery contract. National Diamond Syndicate ("NDS") hired United Parcel Service ("UPS") to deliver three c.o.d. parcels, choosing UPS's "cash only" collection option. UPS collected three facially valid cashier's checks, which were subsequently discovered by NDS to be counterfeit. NDS claims that UPS breached the parties' contract by collecting the cashier's checks in lieu of currency without first verifying their validity or informing NDS of the "suspicious circumstances" surrounding the deliveries; UPS defends on the thesis that the commercial world and NDS accept cashier's checks as "cash." On cross motions for summary judgment, the district court ruled that UPS had breached the parties' contract by failing to collect "cash," but found that NDS had partially ratified UPS's breach. UPS now appeals from the district court's interpretation of the "cash only" term, and NDS cross-appeals from the district court's ruling on ratification. We reverse on UPS's appeal and affirm on NDS's cross-appeal.

## I. Factual Background

The parties' summary judgment submissions establish the essential facts of this case. *See* Joint App. at 2–43. In late June and early July of 1986, NDS, a diamond wholesaler located in downtown Chicago, received three orders for diamonds from two individuals in California, Michael Conto and Paul Ryan. Conto and Ryan represented themselves as retail jewelry store owners. On June 25, 1986, Kumar Rampersad, one of NDS's shipping clerks, telephoned UPS to request pickup of a package of diamonds for c.o.d. delivery to Michael Conto. UPS was instructed to collect $15,-644.75; Rampersad further instructed the UPS customer service representative with whom he placed the order to mark the shipment "cash only." UPS's shipper receipt for that package indicates that the package was so marked.

On July 2, Rampersad again telephoned UPS and requested pickup of two packages to be delivered c.o.d. to Paul Ryan. UPS was instructed to collect $15,559.00 for one package and $5,590.00 for the second. UPS's shipper receipt for the latter demonstrates that UPS was to collect "cash only" for that parcel. However, the shipper receipt for the more valuable Ryan package does not indicate that UPS was to accept "cash only" upon delivery. NDS charges UPS with this omission, but UPS has asked us to assume, for purposes of this appeal only, that all three parcels carried a "cash only" instruction.[1]

UPS delivered the Ryan packages on July 3 and collected a cashier's check for each in the proper amounts. The UPS deliveryperson determined that the checks were facially valid. Following its usual practice, UPS forwarded the checks to NDS on or about July 10, 1986.[2] NDS's

---

**1.** NDS states that its shipping clerks customarily type "cash only" on the business's shipping label when a package is to be delivered c.o.d. However, neither NDS's shipping label nor UPS's shipper receipt for the more valuable Ryan delivery contains a "cash only" instruction. UPS has reserved the right to contest this issue should the case be remanded for further factfinding. In light of our disposition of this case, however, it is unnecessary for us to address the discrepancy.

**2.** When UPS collects currency for a c.o.d. delivery, it deposits the money in its own account and draws a check on that account payable to the shipper. When UPS receives a negotiable instrument, however, it simply forwards the instrument itself to the shipper. Joint App. at 26–27, ¶ 12 (affidavit of David M. Powell, UPS Metro Chicago Customer Service Area Manager) [hereafter "Powell aff."].

bookkeeper, Ruppert Cotey, posted the payments on the company's computerized account records and deposited the cashier's checks, along with the rest of the payments received that day, in NDS's account at LaSalle National Bank.

The Conto package was delivered by UPS on June 25, and the UPS driver again accepted a facially valid cashier's check from the recipient. UPS sent the check to NDS, but NDS did not deposit that check because it had already learned from LaSalle that the Ryan cashier's checks were counterfeit. Since the Conto cashier's check was written against the same bank as were the Ryan checks, NDS telephoned that bank and learned that the Conto check, too, was counterfeit.

NDS sued UPS for the value of its three shipments, claiming breach of contract because UPS had collected counterfeit cashier's checks when it was instructed to deliver the packages for "cash only." NDS concedes that all three cashier's checks were facially valid, but argues that UPS should not have accepted the cashier's checks without verifying their validity or informing NDS of the "suspicious circumstances" surrounding the Ryan and Conto deliveries. UPS asserts in its defense that cashier's checks are the commercial equivalent of currency and, thus, are "cash." Further, UPS contends that NDS understands cashier's checks to be an authorized form of payment for "cash only" deliveries, since NDS accepted cashier's checks for such shipments before receiving the counterfeit instruments and has continued to do so since that time.

The district court concluded that the term "cash only" is unambiguous and held that UPS breached its contract with NDS by accepting payment in a form other than "cash" (*i.e.,* currency). Since NDS deposited the Ryan cashier's checks without qualification, however, the court ruled that NDS had ratified UPS's breach as to those checks. UPS was found liable for the amount of the Conto check. Each party appeals from the portion of the district court's judgment decided adversely to it.

## II.  The Meaning of "Cash Only"

We review *de novo* a district court's grant or denial of summary judgment. *Santiago v. Lane,* 894 F.2d 218, 220 (7th Cir.1990); *Dribeck Importers, Inc. v. G. Heileman Brewing Co.,* 883 F.2d 569, 573 (7th Cir.1989). Under Illinois law,[3] if a contract is "in writing, is unambiguous and contains no uncertain terms, interpretation of the contract is a question of law for the court," *Nerone v. Boehler,* 34 Ill.App.3d 888, 890–91, 340 N.E.2d 534, 536 (5th Dist. 1976), and no evidence outside the four corners of the contract may be employed to construe its terms. *A.A. Conte, Inc. v. Campbell–Lowrie–Lautermilch Corp.,* 132 Ill.App.3d 325, 329, 87 Ill.Dec. 429, 432, 477 N.E.2d 30, 33 (1st Dist.1985). Whether a contract is ambiguous is a question of law, and "ambiguity can be found only if the language [of the contract] is reasonably or fairly susceptible of more than one construction." *Id.,* 132 Ill.App.3d at 328, 87 Ill.Dec. at 432, 477 N.E.2d at 33; *accord W.H. Lyman Constr. Co. v. Village of Gurnee,* 131 Ill.App.3d 87, 96, 86 Ill.Dec. 276, 283, 475 N.E.2d 273, 280 (2d Dist. 1985); *see also Fields v. Franklin Life Ins. Co.,* 115 Ill.App.3d 954, 958, 71 Ill.Dec. 776, 778, 451 N.E.2d 930, 932 (5th Dist.1983) (ambiguity in meaning of contract may be created by language used, or by some disputed extrinsic facts, such as peculiar meaning attached to words by parties). Thus, we must decide as an initial matter whether the term "cash only" in the c.o.d. shipping contracts at issue here is ambiguous.

Cashier's checks fall within the dictionary definition of "cash." Webster's Third New International Dictionary (1976) defines cash as

ready money (as coin, specie, paper money, an instrument, token, or anything else being used as a medium of exchange) ...; *broadly:* bank deposits and certain readily negotiable paper (as checks, drafts, notes, bearer bonds, coupons) ... money or its equivalent paid immediately or promptly after purchasing.

**3.** The parties agree that Illinois law applies to      this case.

Similarly, the entry on "cash" in Black's Law Dictionary (5th ed. 1979) states: "Money or the equivalent; usually ready money. Currency and coins, negotiable checks, and balances in bank accounts. That which circulates as money." Ballantine's Law Dictionary (3d ed. 1969) makes the following addition to the definition of cash: "... the antonym of credit; it includes coins, currency, a cashier's check, and a certified check."

Court definitions of cash vary with the circumstances presented by a particular case. *E.g., Flower v. Dort,* 260 S.W.2d 685, 687–88 (Tex.Civ.App.1953) (construing "cash" broadly in context of will); *Lane v. Railey,* 280 Ky. 319, 133 S.W.2d 74, 78–79 (App.1939) (in context of will, "cash" included "stocks, bonds, bank credits, and such other personal intangible property as might be readily converted into 'cash' or 'money.' "); *compare A.W. Cullum & Co. v. Calvert,* 450 S.W.2d 419, 423 (Tex.Civ. App.1970) ("Cash has been defined as that which circulates as money ...," but trading stamps are not cash for purposes of sales tax laws.) (citing *Flower v. Dort*), *with Lee v. State Dept. of Public Health and Welfare,* 480 S.W.2d 305, 309–10 (Mo. App.1972) ("Cash" is "money or currency issued by lawful authority intended to pass and circulate as such, ..." and prearranged burial contracts were not "cash" for purposes of terminating old-age benefits.).

Only a few courts, however, have directly addressed the question whether a cashier's check constitutes cash for a specific transaction. *E.g., Greenberg v. Alter Co.,* 255 Iowa 899, 124 N.W.2d 438, 441 (1963) (in context of public auction sale advertisement, cash included cashier's check); *Leen-et Jewelry Corp. v. United Parcel Service, Inc.,* Index No. 64051/86 (N.Y.Civ.Ct. Apr. 22, 1987), *reprinted in* Joint App. at 141–42 (interpreting c.o.d. delivery contract and holding that "commercially a cashier's check has always been deemed the equivalent of cash.") (citations omitted). *But see Streiff Jewelry Co. v. United Parcel Service, Inc.,* 670 F.Supp. 341, 343 (S.D.Fla. 1987) ("[A] cashier's check is not the equivalent of 'cash only' [in a c.o.d. delivery

contract]...."), *opinion withdrawn and judgment vacated* at parties' request pursuant to settlement agreement, 679 F.Supp. 7 (S.D.Fla.1988); *Perry v. West,* 110 N.H. 351, 266 A.2d 849 (1970) (in context of public auction, "cash" did not include cashier's checks). The only Illinois case we have discovered on the topic dates back to 1895 and adopts a narrow definition of "cash" in the context of a sales contract clause providing "terms of sale cash." *Anglo–American Provision Co. v. Prentiss,* 57 Ill.App. 507, 511 (1st Dist.) (" 'Cash' [in the "terms of sale cash" clause] meant, strictly, not certified checks, or national bank notes, but legal tender money."), *aff'd,* 157 Ill. 506, 42 N.E. 157 (1895). The definition of cash in that case, however, was not necessary to the disposition of the appeal and is therefore mere dictum. Due to the age of the case and the lack of any recent exposition of the meaning of "cash" by Illinois courts, we do not consider this definition of "cash" controlling.

▮ Based on the multiplicity of definitions of the term "cash" and the widespread view that cashier's checks circulate as cash in modern transactions, *see* cases cited *infra* at section II(A), we find that the term "cash only" was "fairly susceptible of more than one construction," *A.A. Conte,* 132 Ill.App.3d at 328, 87 Ill.Dec. at 432, 477 N.E.2d at 33, and the district court erred in refusing to consider extrinsic evidence of the parties' understanding of the term.

UPS tenders two arguments in support of its interpretation of the c.o.d. contract. First, UPS appears to assert that "cash" includes cashier's checks as a matter of law. Second, UPS argues that it had implied authority to accept cashier's checks in lieu of currency based on industry custom, the parties' course of dealing and NDS's own understanding of "cash only."

A.

▮ UPS offers numerous case citations in support of its position that cashier's checks are included within the legal definition of "cash." Appellant's Brief at 12–14.

These decisions express the view that "[a] cashier's check circulates in the commercial world as the equivalent of cash." *Able & Assoc. v. Orchard Hill Farms of Ill., Inc.,* 77 Ill.App.3d 375, 382, 32 Ill.Dec. 757, 761, 395 N.E.2d 1138, 1142 (1st Dist.1979) (quoting *National Newark & Essex Bank v. Giordano,* 111 N.J.Super. 347, 268 A.2d 327, 329 (Law Div.1970)); *see also Da Silva v. Sanders,* 600 F.Supp. 1008, 1013 (D.D.C. 1984); *First Fin. L.S.L.A. v. First Amer. Bank and Trust Co.,* 489 So.2d 388, 391 (La.Ct.App.), *writ denied,* 492 So.2d 1217 (La.1986); *Malphrus v. Home Sav. Bank,* 44 Misc.2d 705, 254 N.Y.S.2d 980, 982 (N.Y. Co.Ct.1965). But, as NDS correctly points out, these cases concern not a carrier's authorization to accept a cashier's check for a "cash only" c.o.d. delivery, but, instead, whether a bank must honor its own cashier's check pursuant to Articles 3 and 4 of the Uniform Commercial Code.

To be sure, the decisions cited by UPS demonstrate courts' cognizance that "[p]eople and businesses have come to view cashier's checks as cash because such treatment furthers certainty in commercial transactions." *Da Silva,* 600 F.Supp. at 1013. Nevertheless, none of these cases suggests that people and businesses *must* accept cashier's checks as they would currency, only that it is convenient for them to do so. We cannot say, on the basis of these rulings, that the Illinois Supreme Court would recognize a cashier's check as the legal equivalent of currency in "cash only" c.o.d. delivery contracts.[4] We cannot, therefore, grant UPS judgment on this basis.

## B.

The parties agree that the c.o.d. delivery contracts made UPS an agent to collect the amounts indicated by the principal, NDS.[5] The Restatement (Second) of Agency describes the duties of an agent to make collections:

> Unless otherwise agreed, an agent to collect from others goods or money due the principal has a duty of using *reasonable care and skill* in making such collections *in accordance with the directions of the principal.*

Restatement (Second) of Agency, section 426 (1958) (emphasis added). Several courts have employed this provision of the Restatement in well-reasoned opinions analyzing a carrier's contractual duties in the collection of payment for a c.o.d. shipment. *E.g., Littleton Stamp & Coin Co. v. Delta Airlines, Inc.,* 778 F.2d 53, 55 (1st Cir. 1985); *American Airlines, Inc. v. Swest, Inc.,* 707 S.W.2d 545, 546 (Tex.1986); *Duderstadt Surveyors Supply, Inc. v. Alamo Express, Inc.,* 686 S.W.2d 351, 355 (Tex. App.1985). We believe that the Illinois Supreme Court would also choose to follow

---

**4.** Of all the cases UPS cites, only *Leenet Jewelry Corp. v. United Parcel Service, Inc.,* Index No. 64051/86 (N.Y.Civ.Ct. Apr. 22, 1987), *reprinted in* Joint App. at 141–42, arguably supports its position that a carrier is *never* liable for accepting a cashier's check for a "cash only" c.o.d. delivery. The New York trial court in that case held that "commercially a cashier's check has always been deemed the equivalent of cash...." *Id.,* mem. op. at 2. However, the court cites as precedent, without discussion, *Fur Funtastic, Ltd. v. Kearns,* 120 Misc.2d 794, 467 N.Y.S.2d 499 (N.Y.Sup.1983), a case barring banks from raising their customers' defenses to excuse stopped payment of bank checks. We are not persuaded that the Illinois Supreme Court would consider these two situations interchangeable. Moreover, one court has taken the position that "a cashier's check is not the equivalent of 'cash only' [in a c.o.d. delivery contract]...." *Streiff Jewelry Co. v. United Parcel Service, Inc.,* 670 F.Supp. 341, 343 (S.D.Fla. 1987), *opinion withdrawn and judgment vacated* at parties' request pursuant to settlement agreement, 679 F.Supp. 7 (S.D.Fla.1988). Given the paucity of precedent on the question and the conflict among those few cases that do exist, we think it best to resolve the issue by analyzing the parties' understanding of the "cash only" term.

**5.** Most courts recognize that a carrier making a c.o.d. delivery acts in a dual capacity. The first capacity is that of a common carrier and bailee. The carrier's duties in this regard are controlled by the Bills of Lading Act, 49 U.S.C.App. sections 81–124, while the c.o.d. instruction is viewed as creating a separate agency for collection. *See Littleton Stamp & Coin Co. v. Delta Airlines, Inc.,* 778 F.2d 53, 54–55 (1st Cir.1985) (collecting cases). The carrier has traditionally been held strictly liable with respect to its duty to deliver, while courts generally apply the law of agency to the carrier's contractual duty to collect on a c.o.d. shipment. *Id.* We believe that Illinois would join those jurisdictions that have recognized this principle.

the Restatement's view of this problem, since the Restatement accords with Illinois agency principles of actual and implied authority.

■ In citing section 426 of the Restatement, UPS contends, in essence, that it had actual or implied authority to collect cashier's checks in lieu of currency. Implied authority is defined under Illinois law as "actual authority circumstantially proved, and is regarded as authority implied by facts and circumstances." *Mateyka v. Schroeder*, 152 Ill.App.3d 854, 863, 105 Ill. Dec. 771, 777, 504 N.E.2d 1289, 1295 (5th Dist.1987) (citing *Devers v. Prudential Property and Casualty Ins. Co.*, 86 Ill. App.3d 542, 546, 42 Ill.Dec. 84, 87, 408 N.E.2d 462, 465 (5th Dist.1980)). The nature and scope of an agency relationship, unless so clear as to be undisputed, are questions that fall within the province of the trier of fact. *Mateyka*, 152 Ill.App.3d at 862, 105 Ill.Dec. at 776, 504 N.E.2d at 1294; *Biggerstaff v. Industrial Comm'n*, 171 Ill.App.3d 845, 849, 121 Ill.Dec. 693, 695, 525 N.E.2d 1000, 1002 (1st Dist.1988).

The specific issues we confront in this case are twofold. First, did UPS collect the cashier's checks "in accordance with the directions of [NDS]"? In other words, did UPS have actual or implied authority to collect cashier's checks for the Ryan and Conto deliveries? Second, did UPS use "reasonable care and skill" in collecting the cashier's checks from Ryan and Conto as payment for the diamond shipments? Since this case involves a motion for summary judgment, we review the decision of the district court drawing all reasonable inferences in favor of the non-moving party. *Santiago v. Lane*, 894 F.2d at 221;

*Bowyer v. United States Dept. of Air Force*, 804 F.2d 428, 430 (7th Cir.1986). On the breach of contract claim, UPS was the non-movant.

1. UPS's Implied Authority to Collect Cashier's Checks

According to UPS, industry custom recognizes cashier's checks as the equivalent of cash; alternatively, UPS argues that its previous course of dealing with NDS and NDS's own understanding of the "cash only" term gave UPS implied authority to accept the cashier's checks in question here.

Because it erroneously found the "cash only" term unambiguous, the district court in this case refused to consider UPS's argument that industry custom and the parties' previous course of dealing authorized UPS to accept the cashier's checks. We believe that UPS raised a genuine issue of material fact as to whether the parties understood "cash only" to authorize UPS's acceptance of cashier's checks.[6]

*a. Existence of an industry custom*

Cashier's checks are commonly accepted in commercial transactions as a perfect substitute for currency; payment by cashier's check reduces the risk of loss and theft that accompanies the use of currency, while certainty of payment is enhanced because the cashier's check is drawn by a bank upon itself. *See* Lawrence, *Making Cashier's Checks and Other Bank Checks Cost–Effective: A Plea for Revision of Articles 3 and 4 of the Uniform Commercial Code*, 64 Minn.L.Rev. 275, 281 (1980) (arguing for reform of UCC to accord with pub-

---

**6.** Illinois's version of the Uniform Commercial Code describes the role of trade usages (or customs) and the course of dealing between the parties in contractual interpretation:

(1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

(2) A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with

respect to the transaction in question. *The existence and scope of such a usage are to be proved as facts....*

(3) A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement.

(4) The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other....

26 Ill.Rev.Stat. § 1–205 (emphasis added).

lic perception of bank checks as equivalent of cash and thereby to enhance certainty in business transactions); *see also* cases cited *supra* at section II(A) (recognizing that cashier's checks circulate in commercial world as cash). Given the wide public recognition of cashier's checks as a full substitute for currency, especially when large amounts of money are involved, the district court should have allowed UPS to prove the existence, nature and extent of the industry custom it asserts.

In support of its contention that cashier's checks are "customarily" accepted as cash, UPS relies on the affidavit of its Metro Chicago District Customer Service Area Manager, David M. Powell.[7] UPS observes that Mr. Powell's affidavit as to the existence of the industry custom has not been controverted by NDS's submissions to the district court. Federal Rule of Civil Procedure 56(e) provides that if an adverse party fails to respond to an assertion in an affidavit with a controverting offer of proof outside the pleadings, "summary judgment, *if appropriate,* shall be entered against the adverse party." (Emphasis added). Summary judgment is not appropriate, however, if the uncontroverted affidavit itself fails to meet the standards of Rule 56(e). Under Rule 56(e), an affiant must be competent to testify and must state specific facts that would be admissible in evidence and are based on the affiant's personal knowledge. *Friedel v. City of Madison,* 832 F.2d 965, 969 (7th Cir.1987); *Ashwell v. Transamerica Co.,* 407 F.2d 762, 766 (7th Cir.1969). Further, if the affiant offers an expert opinion, she must give *reasons for* the opinion, and not merely state her conclusions. *Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chicago,* 877 F.2d 1333, 1339 (7th Cir.1989); *see also Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.) ("[A] bare contention that an issue of fact exists is insufficient to raise a factual issue."), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

■ Summary judgment is not appropriate on the basis of Mr. Powell's conclusory statement in his affidavit that UPS's acceptance of cashier's checks for "cash only" c.o.d. deliveries accords with industry practice. Under Illinois law, "a usage or custom to be binding must be so uniform, long-established and generally acquiesced in and so well known as to induce the belief that the parties contracted with reference to it, nothing appearing in their contract to the contrary, and the existence of such a custom or usage cannot be considered established when the proof consists of a few isolated instances." *Clark v. General Foods Corp.,* 81 Ill.App.3d 74, 78, 36 Ill. Dec. 447, 451, 400 N.E.2d 1027, 1031 (3d Dist.1980) (quoting *Kelly v. Carroll,* 223 Ill.App. 309, 315–16 (1st Dist.1921)); *see also Traff v. Fabro,* 337 Ill.App. 83, 87–88, 84 N.E.2d 874, 877 (1st Dist.1949). Evidence of an industry custom should in many cases be presented by several witnesses so as to establish the general knowledge and acceptance of the purported custom or usage within a particular industry in a particular location at a particular time. *Ledbetter v. Crudup,* 114 Ill.App.3d 401, 403, 70 Ill.Dec. 391, 393, 449 N.E.2d 265, 267 (3d Dist.1983); *DeGraw v. State Sec. Ins. Co.,* 40 Ill.App.3d 26, 34, 351 N.E.2d 302, 309 (1st Dist.1976); *Marler v. Moultrie–Shelby Farm Serv.,* 11 Ill.App.3d 204, 207, 295 N.E.2d 744, 747 (4th Dist.1973); *Traff v. Fabro,* 337 Ill.App. at 88, 84 N.E.2d at 877. UPS has offered the testimony of only one witness to establish its claim of industry custom. Further, Mr. Powell has not presented sufficient qualifications to establish his competence to testify about industry practice, nor has he spec-

---

7. Mr. Powell's affidavit accompanied UPS's motion for summary judgment. Joint App. at 23–27. The relevant portion of the affidavit is paragraph 9, which reads:

9. If a shipper requests C.O.D. delivery but does not request "cash only", it is the customary practice of UPS delivery drivers to accept currency, non-certified personal or business checks, certified checks, money orders or cashier's checks from the consignee. If a shipper requests that a C.O.D. delivery be made "cash only", it is the customary practice of UPS drivers to accept only currency, certified checks, cashier's checks or money orders from the consignee (non-certified personal or business checks are not accepted) *in accordance with industry practice.*

Joint App. at 25 (emphasis added).

ified *which* industry recognizes cashier's checks as a customary substitute for currency in "cash only" c.o.d. deliveries. Thus, it would be inappropriate to grant UPS summary judgment based solely on Mr. Powell's casual reference to the existence of an "industry practice."

### b. *The parties' previous course of dealing*

The district court also failed to consider UPS's argument that its course of dealing with NDS authorized UPS to collect the cashier's checks for the Ryan and Conto deliveries. This, too, was error, since evidence of the course of dealing could have clarified the meaning of the "cash only" term.

The uncontroverted facts demonstrate that NDS had accepted cashier's checks for "cash only" deliveries by UPS at least twice prior to the Ryan and Conto shipments. Joint App. at 226–27, 234–43 (deposition of NDS bookkeeper, Ruppert Cotey) [hereafter "Cotey dep."]. Further, although NDS claimed that it marked every c.o.d. shipment "cash only," Ruppert Cotey testified that NDS had on at least one occasion during his tenure as bookkeeper accepted a money order collected by UPS. *Id.* at 238. According to NDS, its officers reviewed every incoming payment, Joint App. at 282 (deposition of NDS Vice–President Garry David Zimmerman) [hereafter "G. Zimmerman dep."], yet prior to the Ryan and Conto deliveries, Mr. Cotey had never been instructed to refuse a cashier's check or money order collected by UPS for a c.o.d. shipment. *Id.* at 226, 238. Such drafts were deposited by NDS in the ordinary course of its business, and NDS never even registered a complaint with UPS about the form of payment being accepted for its c.o.d. shipments.

We need not decide, however, whether these three instances in which NDS accepted allegedly nonconforming forms of payment from UPS establish the existence of a course of dealing binding upon NDS. Instead, we find that NDS has admitted UPS's authority to collect cashier's checks for the "cash only" shipments at issue here.

### c. *NDS's understanding of "cash only"*

NDS never truly contests only the medium of payment it received for the shipments; rather, it argues that UPS should have collected cash for the shipments, *or* informed NDS of the "suspicious circumstances" surrounding the Ryan and Conto deliveries *or* verified the three cashier's checks before accepting them. *See* Joint App. at 41–42, ¶¶ 20–24 (affidavit of NDS President Edgar Zimmerman) [hereafter "E. Zimmerman aff."]. The disjunctive form of NDS's argument amounts to an admission that cashier's checks were an authorized medium of payment for the Ryan and Conto shipments; NDS simply wishes us to infer that UPS could accept cashier's checks only if it met certain conditions, namely, either informing NDS of the "suspicious circumstances" or verifying the checks with the issuing bank. These conditions were not part of the bargain, whether implicitly or expressly, except to the extent that they affect the *reasonableness* of UPS's conduct in accepting the checks. We treat that issue *infra*.

■ Further, NDS's conduct belies its denial of UPS's authority to accept the cashier's checks. A court may look to the contracting parties' own conduct in order to determine their understanding of ambiguities in the agreement. *Pioneer Life Ins. Co. v. Alliance Ins. Co.*, 374 Ill. 576, 590, 30 N.E.2d 66, 73 (1940) ("Where the terms of an agreement are in any respect ambiguous and the parties have by their own acts placed a reasonable construction upon them, their interpretation will be adopted by the court."); *Wald v. Chicago Shippers Ass'n*, 175 Ill.App.3d 607, 620, 125 Ill.Dec. 62, 71, 529 N.E.2d 1138, 1147 (1st Dist. 1988) (same); *see also Marathon Plastics, Inc. v. International Ins. Co.*, 161 Ill. App.3d 452, 464, 112 Ill.Dec. 816, 823, 514 N.E.2d 479, 486 (4th Dist.1987) (evidence of parties' interpretation of their contract may be seen in their contemporaneous and sub-

sequent acts or conduct), *appeal denied*, 119 Ill.2d 559, 119 Ill.Dec. 387, 522 N.E.2d 1246 (1988); *Hodgman, Inc. v. Feld*, 113 Ill.App.3d 423, 428, 69 Ill.Dec. 233, 237, 447 N.E.2d 450, 454 (2d Dist.1983) (same).

■ Here there are no disputed facts about the contracting parties' conduct. Although NDS's officers personally review each incoming payment, the company never hesitated to deposit cashier's checks until the Ryan and Conto checks bounced. It is also undisputed that NDS continues to accept cashier's checks collected by UPS as payment for "cash only" c.o.d. shipments, but deposits the checks only *after* it has verified their validity with the issuing bank. *See* Joint App. at 227–28 (Cotey dep.); *id.* at 304 (G. Zimmerman dep.). NDS confesses that it has never complained to UPS about UPS's collection of cashier's checks and money orders for "cash only" c.o.d. shipments. Appellee's Reply Brief at 12.[8] When a reasonable person could reach only one conclusion about the meaning of ambiguous contract language, the court may resolve the ambiguity without resort to a jury. *Wald*, 175 Ill.App.3d at 619, 125 Ill.Dec. at 70, 529

N.E.2d at 1146. We find that a reasonable person would have to infer from these facts that NDS understood "cash only" to include cashier's checks.[9]

We think that the form of NDS's argument before this court and the district court, together with the undisputed facts, demonstrates NDS's understanding that the "cash only" term implicitly authorized UPS to collect cashier's checks.[10] The only remaining question, therefore, is whether UPS employed "reasonable care and skill" in collecting the three counterfeit cashier's checks.

2. UPS's Use of "Reasonable Care and Skill" in Collecting the Cashier's Checks

■ The parties concede that there was nothing about the checks themselves that would alert a reasonably careful delivery-person that they were counterfeit. Joint App. at 54 (Cotey dep.); *id.* at 70 (G. Zimmerman dep.). NDS argues, however, that UPS should have been suspicious when it was presented with the checks because Conto and Ryan, who had allegedly never before received UPS deliveries at the ad-

---

**8.** In its Reply Brief at 12–13, NDS attempts to excuse its failure ever to register a complaint with UPS by arguing that such action would have been futile. We are not persuaded by this weak effort by NDS, mustered for the first time in reply, to justify its inaction.

**9.** NDS contends in its cross-appeal on the ratification question that it deposited the Ryan cashier's checks to "mitigate its damages." We do not consider this a reasonable inference from the facts, given NDS's failure to advise UPS of its objection to the medium of payment or to qualify its deposit of the checks in any way. We are puzzled, moreover, as to how NDS could have attempted to mitigate its damages before it had any idea it had suffered an injury. NDS should have rejected the Ryan checks; it cannot seek cover for its failure to do so under this inappropriate invocation of the mitigation principle.

**10.** Since NDS instructed UPS to collect large amounts of money on delivery of the Ryan and Conto shipments (one in excess of $5,000, the other two in excess of $15,000), UPS claims that NDS implicitly authorized it to accept cashier's checks in lieu of currency. UPS notes that it charged NDS only $1.90 for c.o.d. service and exacted no additional charge for a collection

designated "cash only." This charge, in UPS's view, could hardly be considered sufficient to cover the high risk of loss or theft to which UPS would be exposed if its drivers were required to collect and carry about with them (in an unarmored truck) such large amounts of currency. The Restatement lends support to UPS's position. Comment d to section 426 states, in pertinent part:

> d. *Medium of payment.* Unless otherwise instructed, an agent is authorized to receive payment only in the medium of payment customary at the time and place.... If the amount is large, the inference is that the agent is authorized to receive payment by bank draft, certified check, post office order or the like, payable to the principal's order....

We have, however, found no cases holding that the collection of a large c.o.d. payment gives rise to an inference as a matter of law that the agent was authorized to accept a cashier's check, or any other bank draft for that matter. The size of the payment and the cost of the service pertain to the factual issue of the reasonableness of UPS's collection of the cashier's checks, and the district court should have considered this evidence in that light.

dresses they gave NDS,[11] received several c.o.d. shipments totalling about $160,000 during the period of time in which NDS sent them its shipments. Further, NDS charges that UPS breached its duty of care by failing to disclose to NDS the existence of these "suspicious circumstances," which were allegedly within UPS's "unique knowledge." Joint App. at 42, ¶¶ 23, 24 (E. Zimmerman aff.). We fail to perceive how UPS breached any duty to NDS by not discovering and disclosing facts relating to Ryan's and Conto's receipt of UPS c.o.d. shipments from suppliers other than NDS. UPS delivers more than 12 million c.o.d shipments each year, Joint. App. at 23, ¶ 2 (Powell aff.); it cannot be expected to keep track of every delivery it makes. NDS, by contrast, is a diamond wholesaler that purports to sell its goods only to retail jewelry operations. Joint App. at 270 (G. Zimmerman dep.). Clearly, NDS was in a vastly superior position to determine the legitimacy of the Ryan–Conto enterprise, and it had a stronger interest than UPS in doing so.

In any event, we disagree with NDS that the circumstances surrounding the UPS deliveries to Ryan and Conto were particularly suspicious. Any person opening a new store would receive a large number of shipments from suppliers over the course of a few days. There was no obvious evidence of wrongdoing that could be detected by a reasonably careful deliveryperson. UPS is a common carrier, not a private investigator. It would be ridiculous to charge UPS with the duty to launch an investigation of every recipient of a c.o.d. delivery. Thus, UPS did not breach its duty to act with reasonable care and skill by failing to disclose to NDS the fact that other c.o.d. deliveries had been made to Ryan and Conto within a short period of time.

■ NDS argues, alternatively, that UPS should have verified the validity of the cashier's checks. Again, we note that NDS was in the better position to discover whether Ryan and Conto were legitimate retailers or con-artists. NDS, however, points out a 1928 New York Court of Appeals opinion, authored by then-Chief Judge Cardozo, which held a carrier strictly liable for collecting a forged certified check as payment for a c.o.d. delivery. *Joseph Mogul, Inc. v. C. Lewis Lavine, Inc.*, 247 N.Y. 20, 159 N.E. 708 (1928). This decision placed liability on a common carrier for accepting a forged certified check without regard to whether custom authorized the acceptance of the instrument in place of currency. The *Mogul* case, however, appears to have fallen into desuetude. Recent cases have held that where the carrier was authorized to accept a negotiable instrument as payment for a c.o.d. delivery, it would be liable only for *negligence* in accepting an invalid instrument. *See Littleton Stamp & Coin*, 778 F.2d at 57 (remanding cause for trial on whether, under particular circumstances of case, carrier breached duty of care by accepting forged certified check as payment for c.o.d. delivery); *Swest*, 707 S.W.2d at 546 ("Whether the circumstances of the case are such that the exercise of reasonable care requires verification is a question of fact to be determined by the fact finder."); *Shockley v. United Parcel Serv., Inc.*, 664 S.W.2d 523 (Ky.App.1983) (where carrier was authorized to accept company check for c.o.d. delivery, carrier had duty only to examine check for facial validity and to assure its compliance with c.o.d. instructions); *The Video Station v. Frey's Motor Express, Inc.*, 188 N.J.Super. 494, 457 A.2d 1217 (App.Div.1983) (carrier breached duty to act with ordinary care, skill and diligence by accepting facially invalid certified check, and under these circumstances carrier should have made further inquiry into check's validity); *American Mach. & Motor Co. v. United Parcel Serv.*, 87 Misc.2d 42, 383 N.Y.S.2d 1010, 1012 (N.Y.Civ.Ct. 1976) (carrier was negligent in collecting check that was *"on its face* stale & [sic]

---

**11.** NDS bases this allegation on UPS's answers to its Supplemental Interrogatories (nos. 4, 5 and 13). Jt. App. at 51, 53. However, UPS stated in its answers only that it was *unaware* whether it had made previous deliveries to Ryan and Conto at the addresses to which NDS shipped its goods. We find NDS's characterization of these responses misleading, and we caution NDS and its counsel against any further such improper arguments.

altered" as payment for c.o.d. delivery).[12] This approach accords with the Restatement, and we believe that the Illinois Supreme Court would follow its logic.

We have already said that the cashier's checks were facially valid and the circumstances of the Ryan and Conto deliveries were not suspicious. Those facts are not disputed here; only the inferences to be drawn from them are questioned. We do not believe that these facts give rise to a reasonable inference of suspiciousness, such that UPS should be held liable for accepting the three cashier's checks. Therefore, we hold, on the basis of the undisputed facts and NDS's admissions, that UPS was authorized to accept cashier's checks in lieu of currency and that UPS did not breach its duty to act with reasonable care and skill by not informing NDS of the other deliveries and by not verifying the facially valid instruments. The district court's award of partial summary judgment to NDS is vacated; summary judgment on the appeal is entered on behalf of UPS.

### III. NDS's Ratification of UPS's Breach

Because we decide that UPS did not breach its contract with NDS by accepting cashier's checks for a "cash only" delivery, we need not address NDS's contention that the district court erred in finding that NDS had ratified UPS's acceptance of the Ryan instruments. Judgment on NDS's cross-appeal is accordingly entered in favor of UPS.

AFFIRMED IN PART, REVERSED IN PART.

---

**12.** The Ohio Court of Appeals for the Eighth District recently resolved an appeal brought by yet another victim of Paul Ryan. *Karat Gold Imports, Inc. v. United Parcel Serv., Inc.,* No. 55827, 1989 WL 98764 (Ohio Ct.App. 8th Dist. Aug. 24, 1989). That case went through a full trial, ending with a directed verdict in UPS's favor. The appellate court affirmed the judgment based primarily on the evidence establishing the plaintiff's understanding of and acqui-

escence in UPS's practice of collecting cashier's checks for "cash only" deliveries. Although not explicitly stating so, the court necessarily rejected *Mogul* in holding that the fact the check was counterfeit had no bearing on the question of UPS's authority to accept it. *See id.* at 7 (plaintiff did not argue that cashier's check was obviously counterfeit or that UPS knew or should have known it was counterfeit).